THE GRAND UNION COMPANY, Plaintiff, *v.* GENERAL ACCIDENT, FIRE AND LIFE ASSURANCE CORPORATION, LTD., Defendant.

First Department, May 27, 1938.

*Philip L. Miller* of counsel [*Sullivan & Cromwell*, attorneys], for the plaintiff.

*Daniel Mungall* of counsel [*E. C. Markel* with him on the brief], for the defendant.

DORE, J. The parties to a policy of legal liability insurance submit their controversy to this court upon an agreed statement of facts.

Plaintiff is a Delaware corporation which took over the assets and assumed the liabilities of the Grand Union Stores, Inc. Defendant, the United States branch of an insurance company of Perth, Scotland, authorized to transact the business of insurance in the State of New York, issued a policy of liability insurance which covered the Grand Union Stores, Inc., and the Grand Union Company, both hereinafter referred to as " plaintiff."

The facts concerning the accident out of which this controversy arises are not in dispute. Plaintiff in 1932 operated a general store for the sale of meat and groceries in Dannemora, N. Y., and employed five men; two employees conducted a department for the sale of meats; three, for the sale of groceries. One Legnard was the manager of the grocery department and had general charge of the store, at least so far as concerns matters that did not relate solely to the conduct of the meat department. He was designated as " manager," had the keys to the store and the combination of the safe, kept the accounts, dealt with customers who requested credit, and signed reports as " manager." On March 8, 1932, while the policy of insurance was in full force and effect, one Samuel Palmer, not employed by plaintiff, entered plaintiff's Dannemora store while the store was open for the business described in the policy, bringing with him a rifle and bullets for it. Shortly after Palmer arrived three of the employees, including the manager, Legnard, went with Palmer into the basement which was used for storage, rigged up a target against the basement door which opened upon the public street, and Palmer and the three employees using Palmer's rifle and bullets then fired five or six shots at the

target. One of the bullets penetrated the door, hit and killed one Dennis Ford who was walking by on the street outside. The shot was fired either by Palmer or by one of the three employees.

By letter dated March 9, 1932, plaintiff gave defendant written notice of the accident, stating that Legnard, its grocery manager of the store in question, one Larry Benway, its meat manager, Harry Gagnier, its clerk, and Samuel Palmer, son of the landlord of the building, were having target practice in the basement of the store in Dannemora and a bullet went through the door and killed Dennis Ford, of Troy, N. Y. Defendant about a month later by letter dated April 5, 1932, replied that the occurrence was not within the terms of its policy in that it was not occasioned by reason of the occupation or use of the premises for the purpose described in the policy declarations; and in addition that the policy excluded coverage when an accident results from the manufacture or presence within the premises of any material intended for use as an explosive; and notified plaintiff that defendant declined to assume liability and would not defend in the event of any action brought.

On October 13, 1932, an action was brought against plaintiff by Dorothy Ford, as administratrix of Dennis Ford, deceased, to recover damages for the death of Ford. Plaintiff notified defendant of the commencement of the action and thereafter mailed defendant a copy of the summons and complaint. Defendant replied that its position, set forth in its original letter of April 5, 1932, refusing to assume liability or to defend, remained unchanged.

Plaintiff thereupon defended the suit itself. After two jury trials and two appeals to the Appellate Division for the Third Department (240 App. Div. 294; 243 id. 255), the case went to the Court of Appeals, which, in *Ford* v. *Grand Union Company* (268 N. Y. 243), reversed a judgment in favor of Ford's administratrix for approximately $60,000 and dismissed the complaint. The opinion of the Court of Appeals is, by reference, made a part of this submission. Both trials were on the original Ford complaint.

It is conceded that plaintiff duly performed all conditions of the policy by it to be performed.

The stipulated facts present the following questions of law:

1. Did defendant breach its promise to defend actions against plaintiff for damages from accidents covered by its policy?

2. If defendant did breach its promise to defend, is plaintiff, in addition to its attorney's fees and disbursements, stipulated to be in the fair and reasonable sum of $7,244, entitled also to the following items of claimed damages:

(a) Cost to plaintiff of two undertakings on appeal, the premiums for which amounted to $1,924.89, which the submission stipulates were in reasonable amounts;

(b) Interest at six per cent on the amounts paid by plaintiff for attorney's fees, bonds and disbursements, from the dates when the several payments were made?

Defendant's promises to indemnify and defend, so far as relevant, read as follows:

" (1) To indemnify the Assured * * * against loss by reason of the liability imposed by law upon the Assured for damages on account of bodily injuries, including death, * * * accidentally suffered or alleged to have been suffered * * * by any person * * * not in the employ of the Assured, by reason of the ownership, care, maintenance, occupation or use of the premises described in [the policy] Declarations and for the purposes therein described, or any business operations therein conducted by the Assured, and also so described * * * while such person or persons are within the premises described * * * or upon the sidewalk or other ways immediately adjacent to such premises.

" (2) To Defend in the name and on behalf of the Assured any suits, even if groundless, brought against the Assured to recover damages on account of such happenings as are provided for by the terms and conditions of this Policy.

" (3) To Pay irrespective of the limits of liability [$5,000] * * * all costs taxed against the Assured in any legal proceeding defended by the Corporation [the insurer], all interests accruing after entry of judgment upon such part thereof as shall not be in excess of said liability, * * * together with all the expense incurred by the Corporation growing out of the investigation of such an accident, the adjustment of any claim or the defense of any suit resulting therefrom."

The " Schedule of Declarations," so far as relevant, reads as follows:

" Statement 5: The premises described above are used for the following purposes: Meat, Grocery & Provision Stores (combined) Retail (N. O. C.)."

" Statement 6: The Assured conducts no business on the premises, except: As above."

The policy was expressly subject to the following conditions:

" A. This Policy does not cover for loss from liability for injuries or death caused to or by: * * *

" 3. Any person or persons by reason of the manufacture or presence within the premises described herein of any material intended for use as an explosive. * * *

" H. No action shall lie against the Corporation to recover for any loss under this Policy unless it shall be brought by the Assured for loss actually sustained and paid by him in money in satisfaction of a judgment after trial of the issue. No such action shall lie to recover under any other agreement of the Corporation herein contained unless brought by the Assured himself to recover money actually expended by him."

Before the submission was agreed upon, plaintiff had started an action against this defendant for damages caused by defendant's alleged breach of contract in refusing to defend the *Ford* action. In that action this court affirmed the denial of defendant's motion to dismiss the complaint for insufficiency (*Grand Union Stores, Inc.*, v. *General Accident, Fire & Life Assurance Corporation*, 163 Misc. 451; affd., 251 App. Div. 810). Instead of trying the case, the parties agreed upon this submission of their controversy.

Plaintiff contends that the decision of this court in *Grand Union Stores, Inc.*, v. *General Accident, Fire & Life Assurance Corporation* (*supra*) presented the identical question of policy coverage raised by the facts stipulated in the present submission and it was resolved in plaintiff's favor; that the accident, whether tested by the facts disclosed on the trial or by the complaint in the *Ford* action, was within the coverage of defendant's policy and defendant is liable to plaintiff for all damages flowing from its refusal to defend; that in addition to the sum of $7,244 stipulated to have been reasonably expended for attorney's fees and disbursements, plaintiff is entitled to the cost to it of the two appeal bonds in the sum of $1,924.89 and to interest on the amounts paid by it in defending the *Ford* action from the several dates of payment, all in the total sum of $9,168.89, with interest.

Defendant contends that as a matter of law an accident happening by reason of the use of the premises as a shooting gallery by the assured's manager and employees is not an accident " by reason of " a use of the premises as a retail meat, grocery and provision store, and since the latter was the only coverage under the policy there was no coverage of the highly hazardous use of the premises for target practice; that the complaint in the *Ford* death action concerned two causes of action both grounded on allegations that the insured permitted the use of the premises for target shooting, and whether defendant should have defended depended on the allegations of said complaint; that the evidence in the record of the *Ford* case and the decision of the Court of Appeals, both a part of this submission, establish that the accident happened by reason of the use of the premises as a shooting gallery; that liability for use of the premises as a grocery and provision store was insured

regardless of whether the employees acted in such use of the store within or without the scope of their employment but any other use of the premises, whether within or without the scope of the employment of the insured's employees, was not covered.

We hold that the question of policy coverage presented by this submission is identical with the question of policy coverage presented by defendant's appeal to this court in the action against it for its refusal to defend the *Ford* action. (*Grand Union Stores, Inc.,* v. *General Accident, Fire & Life Assurance Corporation, supra.*) Plaintiff's complaint in the prior action had not annexed to it a copy of the complaint in the *Ford* suit but alleged the material facts proved in that action. Defendant, however, argued that the complaint in the *Ford* action did not allege an action within the policy coverage and that, therefore, defendant was not bound to defend. Plaintiff expressly waived the point that the complaint then under attack did not have annexed to it a copy of the *Ford* complaint and submitted to the Special Term a copy of the pleadings in the *Ford* action and consented that the motion be heard and determined as if the *Ford* complaint had been annexed to its complaint. On appeal to this court a copy of the record in the *Ford* action was submitted. The briefs in that appeal show that the issue was fully argued on the merits. While technically our decision on the former appeal is neither *res judicata* nor the law of the case on this submission, the identical issue was decided by this court adversely to defendant's contentions.

We prefer, however, not to rest our decision on the prior determination, and hold on the merits of the controversy now submitted to us that defendant was obligated to defend.

The complaint in the *Ford* action alleged two causes of action, one in nuisance and the other in negligence. It is unnecessary to examine the complaint in detail; it is sufficient to point out that the *Ford* complaint was so drawn as to permit proof of the facts that was actually made and hereinabove summarized and on those facts defendant was obligated to defend even if the suit were groundless and the insured had no liability. It is to be noted that defendant did not rely on the complaint in the *Ford* action for its refusal to defend. Before the summons and complaint were served defendant disclaimed liability obviously on the basis of its own investigation of the facts; and after the *Ford* complaint was submitted, defendant again disclaimed liability not because of anything in the complaint but because of its position previously taken that the accident itself was not within the policy coverage.

Omitting irrelevant words, the policy defines the coverage as " injuries suffered by reason of the ownership, care, maintenance,

occupation or use of the described premises for the declared purposes by the assured," viz., a meat and grocery store. Plaintiff was concededly using the premises for the purpose declared, namely, as a meat, grocery and provision store. As far as plaintiff was concerned the injury did arise "by reason of" the use of the premises *by it* as a retail meat, grocery and provision store. The risk of injuries caused by employees is just as much one of the ordinary business risks of a business where the employees are engaged in a frolic as where they are acting fully within the scope of their employment, and on the facts submitted it seems to us immaterial that the particular frolic happened to be an odd one. If the employees purely for their own amusement were throwing cans of tomatoes to each other in a game of catch and thus unreasonably endangered the safety of persons on the premises or the sidewalk immediately adjacent, such action on their part would be outside the scope of their employment. But if a passerby was injured in such frolic, it is clear, irrespective of the insured's liability to the injured party, that defendant would be obligated to defend. In principle no distinction can be made between that frolic and the one that occurred. If the hazard of injuries from frolics is included in the coverage, this particular frolic should not be excluded because it happens to be unusual.

The distinction between liability and coverage must be kept in mind. So far as concerns the obligation of the insurer to defend the question is not whether the injured party can maintain a cause of action against the insured but whether he can state facts which bring the injury within the coverage. If he states such facts the policy requires the insurer to defend irrespective of the insured's ultimate liability. We hold that the coverage of this policy includes injuries caused by the negligent acts of employees on the premises while the premises are being used by the insured for the declared purposes but where the insured's employees are temporarily acting outside the scope of their employment without notice to or approval by the employer. Any exclusion from coverage of such an ordinary risk of the use of premises for business purposes must be by clear and unequivocal language.

No insured reasonably reading this policy would see in it an intention to make the distinction defendant attempts to make. In accordance with the settled rule that in case of doubt policies of insurance are construed against the insurer, an accident of the sort in question must be held to be within the coverage.

It is to be noted that in the reversal of the final judgment in the *Ford* action the Court of Appeals expressly found that notice of the frolic was not brought home to defendant, as the store manager

at the moment was acting as an individual. The court said: " Here there was more than acquiescence by the manager in such conduct; there was actual participation therein, but the beginning of participation in the frolic constituted temporary abandonment of employment. From that moment the manager was acting as an individual and not as agent of the defendant. Thus, even though we assume that knowledge was conveyed to the manager, and through him to the defendant, that danger to the public might ensue unless reasonable care were exercised to prevent such danger, at the same moment when duty to use reasonable care arose, the defendant, without fault of its own, was left without a representative or agent who could perform that duty. No reasonable care would have enabled the defendant to foresee such a contingency, and after it occurred even the highest degree of care would not have enabled the defendant to prevent the injury which followed. In such circumstances, we think, the defendant cannot be said to have failed in the exercise of reasonable care." (*Ford* v. *Grand Union Company*, 268 N. Y. 243, 253.)

We also hold that the " explosives " condition of the policy did not except the injury from the coverage. Defendant's argument reposes on an entirely too technical and literal interpretation of the word " presence." The " presence " (of any material intended for use as an explosive) should not reasonably be construed as including a purely casual, transient " presence " on the premises of an article brought there by an outsider wholly for his own purposes without notice to or consent and approval by the insured. The words " material intended for use as an explosive " should not reasonably be construed as applying to the cartridges of the bullets thus casually and transiently brought upon the premises by such outsider. The literal interpretation of the word " presence " in the excepting clause is negatived by its context.

The accident being within the coverage defendant was obligated to defend and having refused to do so is liable to plaintiff for damages caused by its failure to defend. In considering the *quantum* of damages it must be kept in mind that plaintiff's right of action herein is not founded on defendant's agreement *to indemnify* nor on its additional agreement to pay the costs taxed against plaintiff in actions defended by the insured. Plaintiff here is suing for defendant's breach of an entirely separate agreement, viz., the express covenant *to defend*. In such case plaintiff's damages are the expenses reasonably incurred by it in defending the *Ford* action after defendant's refusal to do so. Such damages include the expense of appeals as well as trials, at least where there are reasonable grounds for appeal and here there were such grounds

since plaintiff's appeals resulted in the final dismissal of the *Ford* complaint. Plaintiff was obliged to protect itself pending the appeals by giving the usual undertakings to stay execution and it is stipulated that the premiums on the two undertakings given were in reasonable amounts. The item, therefore, of $1,924.89, the aggregate of the premiums on the two appeal bonds is as clearly a proper part of plaintiff's damage as the item of $7,244 for attorney's fees and expenses conceded by defendant as recoverable if the accident was within the coverage.

That the judgment against plaintiff in the *Ford* action and the reasonable expenses incurred in its defense were in excess of the $5,000 indemnity limitation of the policy under its agreement of indemnity is immaterial in this action for damages for breach of defendant's promise to defend.

*Kennelly* v. *London Guarantee & Accident Co., Ltd.* (184 App. Div. 1), relied on by defendant, is not in point. In that case the insured sued the insurer on an agreement to indemnify. The insurer had defended and wished to appeal a judgment in excess of the policy limit and offered security to stay execution to the extent of its liability but the insured was unable to give security for the balance and after execution against his property had been returned and to prevent a threatened body execution the insured settled the claim with the judgment creditor without the insurer's knowledge or consent and in violation of the provisions of the policy. When the insurer sought to continue its appeal the appellate court dismissed the appeal on the ground the claim had been settled and the insurer was thus deprived of all opportunity to review its liability on appeal. It was accordingly held that this released the insurer from its obligation of indemnity. That is not this case.

This action is not based on defendant's agreement to pay costs and expenses of action against plaintiff where the insurer had undertaken the defense, and there is, therefore, not presented the question what the expenses of such defense should be on the insurer's part. This claim is for defendant's initial and complete breach of its promise to defend and the damages claimed are within the limitation prescribed by the second sentence of condition H of the policy (*supra*), viz., " money actually expended by " plaintiff. The question here is whether the cost of the appeal bond can be recovered by the insured in a case where the insurer wrongfully refuses to defend at all and the insured taking the whole burden has successfully defended. We hold that such cost is recoverable. No good reason is suggested for apportioning the charge of a bonding company for writing an appeal bond and not

apportioning the charges of the assured's attorneys for briefing and arguing the appeal.

Defendant does not contend that plaintiff is not entitled to interest on the amounts paid by it in defending the *Ford* action from the several dates of payment stipulated in the submission.

Plaintiff is accordingly entitled to judgment against defendant for the sum of $9,168.89, with interest at six per cent on the several items making up this total from the stipulated respective payment dates thereof.

MARTIN, P. J., COHN and CALLAHAN, JJ., concur; TOWNLEY, J., dissents.

Judgment directed in favor of the plaintiff against the defendant for the sum of $9,168.89, with interest at six per cent on the several items making up this total from the stipulated respective payment dates thereof. Settle order on notice.