Harold Baer, J.
This is an action to recover legal fees and disbursements from the defendant insurance company. The *21 plaintiff architects were insured against claims arising out of 'the performance of professional ¡services and caused hy errors, omissions or acts of -the assured.
This action arose by reason of defendant’s disclaimer requiring plaintiff to retain attorneys and pay fees and disbursements for defense against a claim. The court ordered a ¡separate trial of the liability issue (CPLR 603), and as this issue was one of law, the parties agreed to waive a jury as to this issue.
The evidence by both parties is documentary. The issue is the interpretation of the policy of insurance. The policy period was September 10, 1959 to September 10, 1962. It agreed to cover the plaintiff architects (I) against liability for damages arising out of the performance of professional services and. caused by any error, omission or act of the insured; (II) “ to defend any .suit, or Arbitration Proceeding’s against the insured alleging such error, omission or act and seeking damages — even if such suit is groundless, false or fraudulent ”; and (IV) “ This policy applies only to errors, omissions or acts which occur — (a) during the policy period and then only if claim is then made against the insured during the policy period, or (b) which occurred prior to the effective date of the policy and then only if claim is made during the policy period provided: (1) no insured had any knowledge of such prior error, omission or act at the effective date of the policy ”, There is no case in this jurisdiction interpreting this very broad insuring agreement in a professional liability policy. In the only other case that could be found involving an insurer’s duty to defend under this type of policy, the court held that the insurer was not bound to defend the insured, because on the face of the complaint, the action against the architect was one of intentional tort — that of conspiracy — an express exclusion in the contract (Grieb v. Citizens Cas. Co., 33 Wis. 2d 552).
The underlining of a part of the insuring agreement is by the court to emphasize the issue of law raised under the following documented facts: Plaintiff contracted on November 9, 1954 with the Board of Education of District 7, Town of North Hempstead, Nassau County, to perform professional architectural services in the construction of a junior high school. The building was 1 ‘ partially completed ’ ’ by September, 1958, but sufficiently completed to permit its use by students. There followed many meetings, letters of complaint and dissatisfaction with various items in the building, and attempts by the architects and engineers to correct these items. Most of the items were the usual “ shakedown ” items. Several caused concern because they were not easy of solution. Outside engi *22 ueers were called in to make suggestions. However, taking all of the correspondence and documents, there is no admission by the architects or definitive accusation by the school board that would manifest knowledge of error, omission or act by the architects prior to September 10, 1959. The three main items of complaint that developed were (1) poor ventilation causing rooms to be too hot or too cold, thus unfit for school purposes; (2) improper and inefficient operation of the boilers and incinerator and poor ventilation in the boiler room; and (3) improper and insufficient lighting in the parking areas. Exhibits A ■through N attest to the continuous efforts made to correct the deficiencies but not until July 12, 1962 was a claim made for arbitration. There is no clear evidence of ‘ ‘ knowledge of such prior error, omission or act at the effective date of the policy ”. In fact, the correspondence points out the problems, the unsolved causes, and the undetermined blame (particularly letters of August 12 and 28, 1959 and September 16, 1959). The architect pointed, out that the difficulties encountered were not by reason of faulty design (particularly letter of August 28, 1959).
The defendant retained counsel to appear for the plaintiff in the arbitration proceedings. Counsel did appear at the first hearing. At the second hearing, and after receipt of a bill of particulars, counsel withdrew. The defendant disclaimed liability, contending that plaintiff had knowledge of the errors, omissions and acts forming the basis of the claim prior to the effective date of the policy.
Both sides rely on what occurred during arbitration. Defendant points to a stipulation settling the claim for poor lighting in the parking area by payment by the architects and a withdrawal of the school board’s claim with reference to ventilation of a chemistry laboratory room. The plaintiff points to the decision of the arbitrators which denied the claims of the school board, and the judgment favorable to the architects. How could ■the architect have knowledge of an error, act or omission that never occurred? This query by plaintiff is logical. However, to determine the issue here presented — knowledge prior to the inception of the policy — we must look at the facts as they existed at the inception of the policy. We cannot permit the events that followed to influence the determination of the rights of the parties on September 10, 1959 (inception of the policy) and July 12, 1962 (date of receipt of notice to arbitrate). The insurer’s duty is determined when the action is brought and not by the outcome of the action. (Pow-Well Plumbing & Heating v. Merchants Mut. Cas. Co., 195 Misc. 251; 50 ALB 2d 458, 475 ; 7A Appleman, Insurance Law & Practice, p. 441, § 4683.)
*23 The action is based on a contract of insurance. The clause relied upon is an integral part of the insuring agreement. The plaintiff has the burden of proof to establish that the claim comes within the provisions of the agreement (Bogardus v. United States Fid. & Guar. Co., 269 App. Div. 615). The clause at issue is not an exclusion clause on which the insurer has ■the burden of proof (Danerhirsch v. Travelers Ind. Co., 202 App. Div. 207). The plaintiff presented a prima facie case with the documents in evidence. The defendant’s answer includes an affirmative defense of knowledge by the architects of the errors, omissions and acts prior to the inception of the policy. This allegation is not supported by credible evidence. The policy is not ambiguous. If it were ambiguous, such ambiguity would have to be determined .strictly against the insurer (Hartol Prods. Corp. v. Prudential Ins. Co., 290 N. Y. 44). The policy relieves the insurer from coverage on work performed by the architect prior to the inception of the policy where claim is filed thereafter only if there was knowledge of errors, omissions or acts by the architect, prior to the inception date of the policy. We are faced, then, with a situation where the plaintiff knew that its client was dissatisfied and that there were some problems that still needed attention. However, (to use the language of the policy) did the plaintiff have “knowledge of * # * [a] prior error, omission or act”1? Ordinarily, the question of whether a party to an action had or had not knowledge is a question of fact (see Schreiber Travel Bur. v. Standard Sur. & Cas. Co. of N. Y., 240 App. Div. 279). In the case at bar, however, the record is devoid of any evidence upon which the defendant could base a claim that plaintiff had the “ knowledge ” contemplated by the policy. It must also be borne in mind that we are not here dealing with the question of whether or not there actually was an “ error, omission or act ”. That would bear on the insurer’s duty to pay — a matter quite apart from its duty to defend which is here at issue (Empire Mut. Ins. Co. v. Bogart, 13 Misc 2d 1094). The duty of an insurance company to defend is determined primarily by the allegations in the complaint against the insured (Doyle v. Allstate Ins. Co., 1 N Y 2d 439; Prashker v. United States Guar. Co., 1 N Y 2d 584). Even where the complaint does not state facts with sufficient definiteness to clearly bring the case within or without the coverage of the policy, it has been held that if there is potentially a case within the coverage of the policy the insurer is obliged to defend (Brooklyn & Queens Allied Oil Burner Serv. Co. v. Security Mut. Ins. Co., 27 Misc 2d 401). The fact that the insurer is possessed of information which may show that *24 the claim against the insured falls outside the coverage of the policy is, in this .regard, of no consequence (Cohen v. Jacoby, 27 Misc 2d 396).
The defendant herein was involved in .similar litigation in 1964 involving, a similar insurance policy (Runyan v. Continental Cas. Co., 233 F. Supp. 214). In that case, defendant refused to defend the assured on the ground that the claim against the insured arose out of an intentional act and that the act was committed prior to the inception of the policy. In rejecting this defense, the court (p. 219), said: “ Continental has completely ignored its further contractual obligation [to the insured] separate and distinct from Paragraph I — ‘ Coverage, ’ namely Paragraph II — ‘ Defense ’ * * # and the answer to whether Continental is liable under either or both of these duties depends ‘ upon different considerations, ’ respectively” (citing Journal Pub. Co. v. General Cas. Co., 210 F. 2d 202, 208). The court then went on to quote with approval the view of the Second Circuit as enunciated in Lee v. Aetna Cas. & Sur. Co. (178 F. 2d 750, 751): “ the insurer will defend the suit, if the injured party states a claim, which, qua claim, is for an injury ‘ covered ’ by the policy; it is the claim which determines the insurer’s duty to .defend; and it is irrelevant that the insurer may get information from the insured, or from anyone else, which indicates, or even demonstrates, that the injury is not in fact ‘ covered. ’ ”
With respect to the allegation that the claim arose prior to the policy period, the court said that there was no proof that the insured had any knowledge that the acts of its employee (in causing the discharge of the .superintendent on the job) were “ erroneous, emissive or wrongful ”, or in anywise the basis of a claim against the insured. It was not until the effect of their actions (i.e., the superintendent was actually discharged) that the insured could be said to have ‘ ‘ knowledge of error, omission or act ”. By that time the policy was in effect.
The case at bar is strikingly similar. There was no evidence that the complaints received by the architect were .such as to charge him with knowledge that they would ripen into a claim or that the insured had committed an “ error, omission or act ” contemplated by the policy. The policy in this case does not say knowledge of a claim or possible claim; it does not say knowledge of a complaint or of client’s dissatisfaction. There is no credible evidence of knowledge of any error, omission or act by the architects. The words in an insurance policy are to be judged in the light of the understanding of the average man who procures such policy (Berkowitz v. New Torh Life *25 Ins. Co., 256 App. Div. 324). The insuring agreement in this policy is most unusual and broad. It covens acts prior to the policy date. The defendant wrote the conditions, charged a premium and should have defended the insured (Goldberg v. Lumber Mut. Cas. Ins. Co., 297 N. Y. 148; Runyan v. Continental Cas. Co., supra).
When defendant’s counsel withdrew and defendant disclaimed, there was no more evidence of ‘ ‘ knowledge of errors, acts or omissions ’ ’ than there is today. The defendant may have had some doubts, but no grounds for disclaimer and withdrawal of counsel. Under the insuring agreement defendant’s obligation to defend was broad, broader than the obligation to pay (Goldberg v. Lumber Mut. Cas. Ins. Co., 297 N. Y. 148, 154, supra; Grand Union Co. v. General Acc. Fire & Life Assur. Corp., 254 App. Div. 274, affid. 279 N. Y. 638). They .should have continued to defend the plaintiff.
It is true that the defendant offered to continue defense of the action conditionally. However, the insurer cannot compel the insured to sign such an agreement and if he refuses to do :so, the insurer must either accept unequivocally or disclaim liability entirely (7A Appleman, Insurance Law and Practice, § 4693; Miller v. Union Ind. Co., 209 App. Div. 455). Having elected the latter course the insurer cannot now say that this lawsuit would never have arisen had the insured agreed to a conditional defense.
The defendant, having withdrawn counsel improperly and having refused to defend, is liable for reasonable counsel fees and disbursements (Goldberg v. Lumber Mut. Cas. Ins. Co., 297 N. Y. 148, supra; Pow-Well Plumbing & Heating v. Merchants Mut. Cas. Ins. Co., 195 Misc. 251, supra; Boyle v. Allstate Ins. Co., 1 N Y 2d 439, supra).