Arnold L. Fein, J.
This is a motion for summary judgment by the fourth-party plaintiff, Fisher Governor Co., Inc. (Fisher), and a cross motion for summary judgment by the fourth-party defendant Liberty Mutual Insurance Company (Liberty) in an action for a declaratory judgment declaring that the comprehensive general liability policy issued by Liberty to Scovill Manufacturing Co. (Scovill) afforded coverage to Fisher under the vendor’s or products liability endorsement to the policy. Fisher contends it was an additional insured under the vendor’s endorsement and that Liberty owed it a duty to defend the main action instituted against Fisher, which was settled during trial before this court on September 11,1974.
For breach of the duty to defend, Fisher seeks a judgment declaring that Liberty is obligated to reimburse Fisher for (1) the amount of Fisher’s contribution toward the settlement of the main action ($265,000); (2) expenses and reasonable attorney’s fees and disbursements incurred by Fisher in the main action; (3) reasonable attorney’s fees and disbursements incurred by Fisher in prosecuting this declaratory judgment action; and (4) reasonable attorney’s fees and disbursements incurred by Fisher in an action brought by Sucrest Corporation (Sucrest) against Fisher in the United States District Court for the Eastern District of Pennsylvania.
*397 I. FACTS
In the main action, arising out of a fire which occurred at Sucrest’s refinery on July 12, 1966, Sucrest sued Fisher and others to recover $3,615,514.58 property damage, alleging liability on the part of Fisher for negligence and breach of warranty in connection with Fisher’s manufacture, sale and distribution of a Fisher type C-152 service line shut-off valve with excess flow-check. The supplemental complaint charged Fisher with negligence, carelessness and recklessness:
"in the designing, planning, testing, inspecting, assembling, packing, shipping, fabricating, manufacturing, supplying and selling of its aforesaid valve in that said valve and its component parts were improperly constructed, machined, fitted and forged”. Other allegations of that complaint alleging breach of warranty, express and implied, made reference to the valve and its component parts.
On February 16, 1971, after discovery proceedings had been initiated in the main action, Fisher commenced a third-party action against Scovill, the manufacturer of the forging in which the shut-off valve with excess flow-check was placed by Fisher. The third-party complaint alleged: (1) prior to the date of the fire Scovill supplied and sold to Fisher the machined forging used on the type C-152 valve; (2) Scovill knew Fisher purchased the machined forging for use on the Fisher type C-152 valves for resupply and/or resale to members of the general public; (3) Fisher was not primarily negligent in any manner with regard to the allegedly defective shut-off valve; (4) Fisher was unaware of any defect, if any, that existed in the machined forging at the time the valve was sold and/or supplied to plaintiff; and (5) any damages which resulted from the accident were caused by the negligence of Scovill in the "design, manufacture, control, supply and sale of the aforesaid machined forging in an improper and thoroughly unworkmanlike manner”. Fisher also impleaded Scovill in an action which had been initiated in July of 1969 by Sucrest against Fisher in the United States District Court for the Eastern District of Pennsylvania.
Scovill, third-party defendant, was insured by Liberty under a comprehensive general liability policy. That policy contained a vendor’s or products liability endorsement; (1) providing insurance with respect to "the possession, consumption, han *398 dling or use of or the existence of any condition in any merchandise or product manufactured, sold, handled or distributed by the named insured”, and (2) extending coverage "to any person or organization with respect to the distribution or sale in the course of business of any merchandise or product manufactured, sold, handled or distributed by the named insured.”
In September of 1972, Scovill’s motion for summary judgment and dismissal of the third-party complaint, was denied on the ground there were issues of fact as to "whether there was negligence in the construction, fitting, forging, etc. of the valves involved and its component parts, one of which was manufactured by Scovill.” (Sucrest Corp. v Fisher Governor Co., NYLJ, Nov. 21, 1972, p 18, col 2.)
On March 16, 1973, some two years after commencement of the third-party action and more than four years after suit was instituted by Sucrest, Fisher made what appears to be its first inquiry as to the extent of the insurance coverage contained in the policy which had been issued by Liberty to Scovill. On that date, interrogatories were served by counsel for Fisher in the Federal action inquiring whether Scovill’s policy with Liberty included a vendor’s endorsement. Allegedly acting in reliance on representations by counsel for Scovill in the Federal action that, according to Liberty, the policy had no such endorsement, Fisher entered into a stipulation withdrawing its jurisdictional defenses in the New York action in return for a discontinuance of the Federal action.
On September 4, 1973, Fisher wrote Liberty inquiring again whether the Scovill policy was endorsed to furnish coverage for Fisher. By letter dated September 24, 1973, Liberty responded that the policy did contain a vendor’s endorsement "which may or may not apply to Fisher”. By letters dated September 26 and October 1, 1973, counsel for Fisher called upon Liberty to take over the defense of Fisher in the main action. Fisher asserted it was an additional assured under the Scovill policy by reason of the vendor’s endorsement. On October 3, 1973, Liberty responded that it would not, under the vendor’s endorsement, assume the defense of and/or indemnify Fisher.
Immediately thereafter, on October 15, 1973, Fisher commenced this fourth-party action against Liberty for a judgment declaring that Liberty was obligated to defend Fisher under the policy which had been issued to Scovill, and that by *399 reason of Liberty’s breach of its obligation to defend, Liberty was further obligated to reimburse Fisher for expenses and reasonable counsel fees expended in defense of the main action and to pay any judgment that might be rendered against Fisher. At a conference held on October 19, 1973, counsel for Fisher again called upon Liberty to assume the defense of the action and Liberty again formally declined.
Trial of the actions commenced on September 3, 1974 and continued until September 11, when the main action was settled for the sum of $535,000, $265,000 of which was contributed by Fisher. The third-party action against Scovill was discontinued with prejudice, and this fourth-party action was severed.
II. ISSUE
The issue is whether Liberty was under a duty to defend Fisher in the main action brought by Sucrest, and if so, when the obligation arose. Fisher contends that Liberty’s responsibility to afford Fisher a defense became ripe in February, 1971, at the time of the service of Fisher’s third-party complaint against Scovill. Liberty, in opposition, asserts that since the Sucrest supplemental complaint in the main action contains no allegation of negligent design or manufacture of the forging by Scovill, coverage within the terms of the policy issued by Liberty never arose.
III. DUTY TO DEFEND
The policy requires that the insurer defend any suit against the insured within the coverage of the policy, "even if such suit is groundless, false or fraudulent”. Under such a provision, the insurer is obligated to handle the defense where there is alleged a state of facts covered by the policy "regardless of whether such allegations squared with objective truth or were utterly false and groundless” (Goldberg v Lumber Mut. Cas. Ins. Co. of N. Y., 297 NY 148, 153).
In determining whether there is a duty to defend, the point of departure is the allegations of the complaint in the action brought against the insured. If the allegations in the negligence action are, on their face, within the compass of the risk covered by the insurance, the insurer is obliged to assume defense of the action (Goldberg v Lumber Mut. Cas. Ins. Co. of N. Y., supra; International Paper Co. v Continental Cas. Co., *400 35 NY2d 322). Although where the alleged facts clearly do not appear to bring the case within the coverage of the policy, the insurer is free of such obligation (Freedman, Inc. v Glens Falls Ins. Co., 27 NY2d 364, mot for rearg den 28 NY2d 859), if various grounds of negligence are alleged, some within and some without the coverage of the policy, the insurer is bound to undertake the defense of the action for the benefit of the assured (Mason-Henry Press v Aetna Life Ins. Co., 211 NY 489; Ross v Maryland Cas. Co., 11 AD2d 1002, affd 9 NY2d 876; Mitchell v Lindstrom, 12 AD2d 813, mot for lv to app den 9 NY2d 613; St. Paul Fire & Mar. Ins. Co. v Clarence-Rainess, 70 Misc 2d 1082, affd 41 AD2d 604). As stated in Prashker v United States Guar. Co. (1 NY2d 584, 592): "The circumstance that some grounds are alleged in the complaints in the negligence actions which would involve the insurance company in liability, is enough to call upon it to defend these actions”.
It follows that the duty to defend is broader than the duty to pay (Goldberg v Lumber Mut. Cas. Ins. Co. of N. Y., supra; International Paper Co. v Continental Cas. Co., supra; Grand Union Co. v General Acc., Fire & Life Assur. Corp., 254 App Div 274, affd 279 NY 638). This principle is a logical consequence of the fact that the duty to defend stems from the insurer’s contractual obligation to the insured, while the liability to pay depends upon the law of negligence (Falter, Inc. v Crum & Forster Ins. Co., 79 Misc 2d 981, 984). As held in Grand Union Co. v General Acc., Fire & Life Assur. Corp., (254 App Div 274, 280, supra): "The distinction between liability and coverage must be kept in mind. So far as concerns the obligation of the insurer to defend the question is not whether the injured party can maintain a cause of action against the insured but whether he can state facts which bring the injury within the coverage. If he states such facts the policy requires the insurer to defend irrespective of the insured’s ultimate liability”.
The reality of the insurer’s obligation is recognized in International Paper Co. v Continental Cas. Co., (35 NY2d 322, 326, supra): "While policy coverage such as the one here involved is often referred to as liability insurance’ it is clear that it is, in fact, litigation insurance’ as well.”
At issue here is the applicability of these principles where: (1) Fisher, who asserts breach of the duty to defend, is not a named insured in the policy, but claims to be covered as an additional assured, pursuant to the vendor’s endorsement and *401 (2) Scovill, the named insured, was neither joined as a defendant nor referred to in the supplemental complaint in the main action brought by Sucrest against Fisher and others.
Liberty asserts that the allegations of the Sucrest supplemental complaint are controlling and are insufficient to invoke either coverage under Liberty’s policy or the express covenant to defend. Liberty contends that the allegations in the Sucrest complaint of improper and negligent forging do not mention Scovill and are not sufficient to establish coverage under the vendor’s endorsement.
Sucrest’s supplemental complaint does not refer to Scovill. Obviously it would not, because Scovill was not a named defendant in the main action. However, paragraph "Eleventh” of the complaint does allege liability on the ground that the "valve and its component parts were improperly constructed, machined, fitted and forged”.
Standing alone, this allegation might not be sufficient to import liability on the part of Scovill, nor to show that Liberty as Scovill’s insurer had a duty to defend Fisher. Nor would it necessarily put Liberty on notice of such possible duty. However, this is not dispositive, despite the fact that the briefs of the parties appear to consider the allegations of the Sucrest supplemental complaint as determinative of the question as to whether Liberty had a duty to defend Fisher. In the cases cited and relied on by both parties, the named insured was a party defendant in the action who claimed that his carrier breached its obligation to defend. Necessarily, in such cases the point of departure was an examination of the allegations of the complaint against the insured. It should follow that what is required here is an examination of both the Sucrest supplemental complaint and the third-party complaint against Scovill, the named insured in Liberty’s policy.
Liberty’s contention that the court may not consider any matter which is not within the four corners of the Sucrest complaint is without merit under the circumstances of this case. The duty to defend may arise at a time subsequent to the commencement of the action (see Lekas Corp. v Travelers Ins. Co., 1 AD2d 15; Goldberg v Lumber Mut. Cas. Ins. Co. of N. Y., 297 NY 148, supra, with reference to the time when the duty to defend arises).
At the time of service of the third-party complaint of Fisher against Scovill (Feb. 16, 1971), Liberty was on notice of its liability to defend Fisher, since at that time, "it appeared *402 from the allegations in the negligence action that the injury was within the coverage of the policy”. (Goldberg, ibid, p 154.) The allegations of the third-party complaint are sufficient to raise the possibility of Fisher’s entitlement to coverage under the Liberty policy issued to Scovill, and its products liability endorsement. The ultimate validity of the allegations is irrelevant. The test of the existence of the duty is not whether the allegations pleaded are true, but whether sufficient facts are stated so as to invoke coverage under the policy. As frequently stated, the duty to defend arises not from the probability of recovery, but from its possibility, no matter how remote. (Commercial Pipe & Supply Corp. v Allstate Ins. Co., 36 AD2d 412, affd 30 NY2d 619; Empire Mut. Ins. Co. v Bogart, 13 Misc 2d 1094; Chatham Corp. v Argonaut Ins. Co., 70 Misc 2d 1028.) As stated in La Pierre, Litchfield & Partners v Continental Cas. Co. (59 Misc 2d 20, 23, mod on other grounds 32 AD2d 353): "Even where the complaint does not state facts with sufficient definiteness to clearly bring the case within or without the coverage of the policy, it has been held that if there is potentially a case within the coverage of the policy the insurer is obliged to defend”.
This is because by its very terms "the policy protects the insured not only against injuries for which there is unquestioned liability but also against law suits on their face within the compass of the risk against which insurance was taken, no matter how groundless, false or baseless those suits may be.” (Goldberg v Lumber Mut. Cas. Ins. Co., 297 NY 148, 154, supra.) Any doubt whether the allegations state a claim within the coverage of the policy must be resolved in favor of the insured and against the carrier (Falter, Inc. v Crum & Forster Ins. Co., 79 Misc 2d 981, supra; Grand Union Co. v General Acc., Fire & Life Assur. Corp., 254 App Div 274, affd 279 NY 638, supra). Moreover, as held in Goldberg, the existence of the duty is not diminished by the insurer’s knowledge of facts indicating no coverage in a case where the complaint contained allegations within the coverage of the policy. The duty to defend survived. "In other words, the insurance company’s duty to defend came into being when it appeared from the allegations in the negligence action that the injury was within the coverage of the policy, and it persisted despite the advice — pointing to a contrary conclusion —furnished by the insured to assist the company in defending the suit.” (Goldberg v Lumber Mut. Cas. Ins. Co., supra, p 154.)
*403 Conversely, where the complaint alleges facts without the coverage of the policy, but the carrier has knowledge of facts indicating coverage, the insurer is to be guided, not exclusively by the allegations of the complaint, but also by the facts known to it (see Roth v Insurance Co. of North Amer., NYLJ, Jan. 13, 1975, p 16, col 1). As observed in Commercial Pipe & Supply Corp. v Allstate Ins. Co. (36 AD2d 412, 415, supra): "Where, as here, the insurer has knowledge of facts which potentially bring the claim within the coverage of the policy it has a duty to defend even though the allegations of the complaint fail sufficiently to allege all of the facts requisite to do so.” Thus in Lekas Corp. v Travelers Ins. Co. (1 AD2d 15, supra), it was held that from the time the proposed amendment to the bill, of particulars was sent to defendant, it had notice of a suit pleaded within the terms of the policy.
In Chatham Corp. v Argonaut Ins. Co. (70 Misc 2d 1028, supra), the named insured was not named in the pleadings. However, the bill of particulars served by the third-party plaintiff claimed that the alleged defective part was purchased from Duraluminum. It was held that such claim identified the subject of the third-party complaint, indicating a potential liability against that corporation, and through it against plaintiff as the surviving corporation through merger.
Here, the fact that a party other than the named insured seeks the protection of a policy issued to the named assured is neither unique nor dispositive. The issue to be resolved is the same as where a named insured asserts a breach of the covenant to defend. Does the party claiming coverage fall within the scope of the policy? (Universal Carloading & Distr. Co. v Merchants Cas., 9 Misc 2d 177). The allegations of the third-party complaint, in this action, viewed in conjunction with those in the Sucrest supplemental complaint are sufficient to invoke the coverage of the policy issued to Scovill by Liberty, under its vendor’s endorsement.
Liberty further contends that, despite the allegations of the main complaint and the third-party complaint, coverage does not exist in favor of Fisher under the vendor’s endorsement, since Fisher, in manufacturing its service line shut-off valve, changed the machined forging supplied and sold by Scovill, so that the end product was different from that manufactured and sold by Scovill to Fisher. On this basis, Liberty’s second affirmative defense alleges that Fisher changed the condition of the forging furnished by Scovill, by the addition and incor *404 poration of other parts not manufactured by the named insured. However, it stands admitted that (1) the forging was manufactured by Scovill and sold to Fisher in the course of its business and (2) the Scovill forging is a component part of the Fisher valve. Moreover, the prior decision denying Scovill’s motion to dismiss the third-party complaint so holds. At least to the extent of measuring the duty to defend, such holding is law of the case.
Whether the use by Fisher of other component parts in addition to that supplied by Scovill might have defeated Fisher’s claim as to Scovill’s liability to Fisher or as to Fisher’s entitlement to coverage under the vendor’s endorsement was a matter for proof on the trial of the main action. This has been foreclosed by the failure of Liberty to assume the defense, and by the settlement of the main action during trial.
Moreover, this argument properly pertains to the carrier’s duty to pay, not to its duty to defend. As noted, the duty to defend is broader than the duty to pay and comprehends the possibility that an insurer may be required to furnish a defense in an action, although it may not ultimately be liable to indemnify the insured.
The same holds true with respect to the contention by Liberty that Sucrest could not have established upon trial that the Fisher C-152 valve was the proximate cause of the fire. A similar argument was expressly rejected in International Paper Co. v Continental Cas. Co. (35 NY2d 322, supra), holding that the duty to defend is not diminished by the possibility or the probability that the plaintiff in the negligence action would not succeed. This obviously could not be determined until the outcome of the underlying action. As that case holds, if the insurer is to be relieved of its duty to defend, it must demonstrate that the allegations are solely within the policy exclusions and that they are subject to no other possible interpretation. Here, Liberty has failed to meet such burden.
Accordingly, it is found that at the time of service of the third-party complaint, Liberty became obligated to assume the defense of Fisher. Liberty’s failure and steadfast refusal to defend was in derogation of its obligations under the policy issued by it to Scovill. Since the claim was within the coverage of the policy, the refusal to defend was unjustified.
*405 IV. DAMAGES FOR BREACH OF COVENANT TO DEFEND
For breach of its covenant to defend, Liberty is answerable to plaintiff for the reasonable counsel fees and necessary expenses incurred in defending the main action (Goldberg v Lumber Mut. Cas. Ins. Co. of N. Y., 297 NY 148, supra; Gordon v Nationwide Mut. Ins. Co., 30 NY2d 427, 436, mot for rearg den 31 NY2d 709, cert den 410 US 931; Grand Union Co. v General Acc., Fire & Life Assur. Corp., 254 App Div 274, affd 279 NY 638, supra; La Pierre, Litchfield & Partners v Continental Cas. Co., 59 Misc 2d 20, mod on other grounds 32 AD2d 353, supra; Commercial Pipe & Supply Corp. v Allstate Ins. Co., 36 AD2d 412, affd 30 NY2d 619, supra; Allied Grand Doll Mfg. Co. v Globe Ind. Co., 28 Misc 2d 1048, mod on other grounds 15 AD2d 901). Such a recovery may properly be the subject of a summary judgment motion (International Paper Co. v Continental Cas. Co., 35 NY2d 322, supra, reinstating the order of the Civil Court of the City of New York, granting plaintiff summary judgment in an action to recover legal fees and disbursements incurred in defending the underlying action).
This includes reasonable counsel fees and necessary expenses incurred in defending the main action instituted by Sucrest, but not expenses incurred in the prosecution of this fourth-party action. A party may not recover legal fees and expenses of litigating coverage. A party entitled to coverage may recover expenses in defending the main action, but not in prosecuting a declaratory judgment action as to coverage (Doyle v Allstate Ins. Co., 1 NY2d 439; Johnson v General Mut. Ins. Co., 24 NY2d 42; Sukup v State of New York, 19 NY2d 519, mot for rearg den 20 NY2d 758; Padavan v Clemente, 43 AD2d 729; Brown v United States Fid. & Guar. Co., 46 AD2d 97).
Fisher may not in this action recover legal fees and expenses incurred in defending the action brought against it in the United States District Court for the Eastern District of Pennsylvania. Although sought on this motion for summary judgment, there is no such request or demand either in the allegations or the prayer for relief in the fourth-party complaint. This denial is without prejudice to any action which Fisher, if so advised, may bring to recover such expenses.
In addition to recovery of reasonable counsel fees and necessary expenses incurred in defense of the underlying negligence action, it is well settled that where an insurer *406 unjustifiably refuses to defend, the insured may make a reasonable settlement or compromise of the injured party’s claim, and will thereafter be entitled to reimbursement from the carrier, despite the fact that the policy purports to avoid liability for settlements made without the insurer’s consent (Rosen & Sons v Security Mut. Ins. Co. of N. Y., 31 NY2d 342; Cardinal v State of New York, 304 NY 400, cert den 345 US 918; Rochester Woodcraft Shop v General Acc., Fire & Life Assur. Corp., 35 AD2d 186; Allied Grand Doll Mfg. Co. v Globe Ind. Co., 20 Misc 2d 1048, mod on other grounds 15 AD2d 901, supra).
Under this principle, Fisher is entitled to reimbursement by Liberty for any reasonable settlement made by Fisher. Such reasonable settlement consummated by the parties is binding upon the carrier. The settlement of the underlying action for the sum of $535,000 and Fisher’s proportionate contribution in the sum of $265,000 occurred during trial, following lengthy and protracted litigation and only after extensive negotiations and conferences presided over by the undersigned both before and during trial of the action. Taking all factors into consideration, and especially the potential liability of the respective defendants to the plaintiff, had Sucrest prevailed upon the trial ($3,635,514.58), it cannot be said that the settlement was either unreasonable or exorbitant. The court finds it was reasonable. Accordingly, Liberty is liable to Fisher for the amount of Fisher’s contribution toward the total settlement, to wit, the sum of $265,000, with interest from the date of payment by Fisher to Sucrest (Grand Union Co. v General Acc., Fire & Life Assur. Co., 254 App Div 274, affd 279 NY 638, supra; La Pierre, Litchfield & Partners v Continental Cas. Co., 59 Misc 2d 20, mod on other grounds 32 AD2d 353, supra).
V. TIME FROM WHICH INSURER’S LIABILITY FOR BREACH OF DUTY TO DEFEND AROSE
There remains for consideration a determination as to the time from which the fourth-party plaintiff Fisher may recover from Liberty its reasonable counsel fees and necessary expenses incurred in defending the main action. This court’s decision that the carrier’s duty to defend Fisher arose in February of 1971, at the time of service of the third-party complaint, does not, in and of itself, require a similar determination as to the time when the obligation to reimburse attached.
*407 The rule is that in the event of a breach of the insurer’s duty to defend, the insured’s damages are the expenses reasonably incurred by it in defending the action after the carrier’s refusal to do so, albeit the duty to defend may have arisen at the time of the accident (Grand Union Co. v General Acc., Fire & Life Assur. Corp., supra; Allstate Ins. Co. v Consolidated Mut. Ins. Co., 35 AD2d 535).
Here, Liberty formally refused to assume the defense on behalf of Fisher on October 3,1973, in response to letters from counsel for Fisher demanding that Liberty take over the defense of the action. In the absence of other pertinent facts, Liberty’s obligation to reimburse Fisher for expenses and fees incurred would run from the date of its refusal to accept the defense of the action. However, decision is complicated by Fisher’s assertion that in March of 1973, its attorney in the Federal action in Pennsylvania was advised that the Scovill policy had no products liability endorsement. The furnishing of this misinformation, whether intentional or inadvertent, is not contradicted by Liberty and may have affected Fisher in its defense of the Sucrest action. Fisher claims that in reliance, it withdrew its jurisdictional defenses to this action in return for discontinuance of the Federal action. Whether actual prejudice resulted need not be determined.
The obligation of an insurance carrier to act in good faith to protect the interests of its insured is manifest, even where there is a conflict between their respective interests (Knobloch v Royal Globe Ins. Co., 46 AD2d 278). As noted by Justice Hopkins, dissenting in that case (p 288), there is authority elsewhere declaring the relationship to be of a fiduciary nature, akin to that of principal and agent. Whatever the relationship, there is an obligation of full disclosure and extreme good faith by the insurer in its dealings with its insured. An insured, or one claiming status as an assured within the coverage of the policy, may reasonably expect an honest and frank disclosure by the insurer as to the details of coverage afforded under the term of the policy. The carrier should not be permitted to benefit from erroneous or misleading information or advice furnished in this regard. Accordingly, Liberty as insurer, is liable to Fisher for reasonable counsel fees and necessary expenses incurred in defense of the underlying negligence action from March 16, 1973 the date of denial of the existence of the vendor’s endorsement covering *408 Fisher, to the date of settlement and discontinuance of the action.
VI. CONCLUSION
The motion by Fisher Governor Co., Inc., as fourth-party plaintiff, for summary judgment pursuant to CPLR 3212 is granted to the following extent only:
(1) Partial summary judgment is granted to Fisher declaring:
(a) Liberty was under an obligation to defend Fisher in the Sucrest action against Fisher as an additional insured under the vendor’s or products liability endorsement of the policy of insurance issued by Liberty to Scovill;
(b) By reason of Liberty’s unjustifiable refusal to assume the defense of Fisher in said action, Fisher is entitled to reimbursement from Liberty for Fisher’s contribution in the sum of $265,000 toward the settlement of said action, with interest from the date of payment by Fisher to Sucrest;
(c) By reason of Liberty’s breach of its obligation to defend, Liberty is obligated to reimburse Fisher for reasonable counsel fees and necessary expenses incurred in defense of the underlying negligence action from March 16, 1973 to the date of settlement of said action and discontinuance thereof. Determination of the amount of such fees and expenses shall be held in abeyance pending a hearing and report by special referee, Honorable Eugene Sullivan, to whom the issue is referred to hear and report together with his recommendations, as to the reasonable counsel fees and necessary expenses incurred by Fisher in defending the main action brought by Sucrest, from March 16, 1973 to and including the settlement and discontinuance of the underlying negligence action;
(d) Fisher is not entitled to recover its legal fees and necessary expenses incurred in prosecuting the fourth-party action.
(2) That branch of Fisher’s motion which seeks recovery for reasonable counsel fees and expenses incurred in defense of the Federal action which had been pending in the United States District Court for the Eastern District of Pennsylvania is denied without prejudice.
(3) The cross motion by Liberty for summary judgment is in all respects denied.