PHILIP PARKER, Respondent, v ROSEMARY PARKER, Appellant.

First Department, February 15, 1979

**APPEARANCES OF COUNSEL**

*Malcolm S. Taub* of counsel for appellant.

*A. Charles D'Agostino* of counsel for respondent.

## OPINION OF THE COURT

BIRNS, J.

In this action for divorce by plaintiff husband, defendant wife seeks to set aside the "stipulation of settlement" entered into by them and detailed below, and to vacate the default judgment obtained against her. Defendant did not succeed at Special Term and has appealed to this court from an order denying her motion to vacate the default.

The parties were married August, 1971 and a daughter was born to them June, 1972. At the inception of the action, in May, 1975, the parties entered into a stipulation, prepared by plaintiff's counsel. Defendant was unrepresented at the time. In the stiuplation, defendant, *inter alia,* acknowledged proper service in the action, that she had no defenses to the cause of action, i.e., abandonment for more than a year (Domestic Relations Law, § 170, subd [2]) alleged by plaintiff, and desired the action to proceed to divorce against her without offering any defense. In addition, defendant relinquished sole custody of their infant daughter, conveyed to plaintiff her interest in their one-family home and waived her right to support or alimony and to an attorney at the signing of the stipulation. One month later, in June, 1975, judgment by default was granted against her. In June, 1976 (almost a year later), defendant, then represented by counsel, moved to vacate her default, claiming that she entered into the stipulation by reason of fraud and duress by plaintiff and his attorney at a time when, because of mental illness, she was incapable of comprehending the significance of the stipulation.

A Referee was assigned to hear and report on the "issues" raised by defendant. After a hearing, the Referee found that "there was no fraud, misrepresentation or misconduct by the plaintiff or his attorney practiced on the defendant" and that "the defendant was not in such a state of disability as not to know what she was doing when she executed the stipulation of settlement." On the basis of the Referee's findings, the court denied defendant's motion. Plaintiff maintains the findings are correct. It is with these findings that defendant takes issue.

■ We conclude that the Referee's findings are against the clear weight of the evidence. There is no doubt that defendant had a history of mental illness, of which plaintiff was well aware. Testimony established that defendant was hospitalized at Pilgrim Psychiatric Center June 13 to July 10, 1974,

September 27 to October 31, 1974 and November 12, 1974 to February 10, 1975. Upon each discharge, she was released to the custody of plaintiff. On May 8, 1975, about three months after her final discharge from Pilgrim Psychiatric Center, defendant at the invitation and in the company of plaintiff, went to the office of plaintiff's attorney. There, at the request of plaintiff and his counsel and without counsel of her own, she signed the stipulation now before us.

Defendant testified that she was unaware of the contents of the papers she signed and had no idea they pertained to a divorce. A psychiatrist from Pilgrim Psychiatric Center testified that defendant was diagnosed as a paranoid schizophrenic and treated with tranquilizers and electric shock therapy. When he last examined her, on February 10, 1975, the date of her final discharge, he determined that although she had made a "good recovery" she was still suffering from mental illness. He found that her ability to think abstractly was diminished, that she was much more sensitive to environmental stress and strain than the average individual, that "her ability to perceive and comprehend the complex legal proceedings" was questionable, and that her mental condition would not have terminated upon her discharge but would have continued for some time thereafter. It was recommended that she continue out-patient treatment and medication.

Evidence gleaned from the records of Soundview Throgs Neck Community Mental Hospital, a mental clinic at which defendant became an out-patient, disclosed that on May 15, 1975, the date she first received treatment at the clinic (one week after she signed the stipulation), she was in a confused state and had memory impairment and that she continued treatment once a week until February, 1976.

■ ■ The hearing before the Referee established, at least prima facie, that defendant was mentally ill on May 8, 1975, the date she signed the stipulation. This conclusion finds support in the testimony of the psychiatrist that defendant on February 10, 1975 was suffering from mental illness, although abated, and that this impairment would not have terminated abruptly but would have continued for some time thereafter. Furthermore, there is a presumption in law that a condition of mental illness, once present, continues to exist (see Richardson, Evidence [10th ed], § 74; § 191, subd [1]).

■ The evidence adduced from the records of the out-patient mental clinic, that on May 15, 1975 she was mentally ill and

that she continued treatment for almost a year thereafter, bolsters the conclusion that she was mentally ill on May 8, 1975. Evidence of the existence of mental illness subsequent to the critical date, especially when proximate to that date, is relevant to defendant's mental condition on that date (see *People v Taylor,* 138 NY 398, 404; see, also, *Waterman v Whitney,* 11 NY 157, 169; *People v Freyre,* 76 Misc 2d 210).

We note the Referee did not find that defendant was without mental disability when she executed the stipulation. His finding was that she "was not in such a state of disability as not to know what she was doing when she executed the stipulation of settlement."* That finding did not reach the crux of the issue, i.e., whether defendant understood the import of what she was signing. There is nothing in the record to show that defendant appreciated the consequences of the stipulation. There is a marked difference between knowledge of an act and understanding its consequences. While it may be said defendant knew she was signing a paper, there is no proof she was aware that this act was a step toward the termination of her marriage, the loss of custodial rights over her infant daughter, and the relinquishment of her interest in real property.

Without counsel, and suffering from mental impairment, defendant obviously was not dealing on terms of equality with plaintiff when she signed the stipulation (see *Matter of Gordon v Bialystoker Center & Bikur Cholim,* 45 NY2d 692, affg 59 AD2d 522). Plaintiff was in a dominant position. He knew that defendant, his wife, had been mentally sick and hospitalized for that illness prior to May 8, 1975. Yet, he invited her to his attorney's office on that day to sign the stipulation, prepared by his attorney. She signed at their request. No one was present to protect her interest. The result was an executed stipulation, clearly one-sided in favor of plaintiff (see *Howard v Murray,* 43 NY2d 417, 420).

As a general rule a party seeking to vitiate an agreement for fraud or duress has the burden of proof on that issue. Nevertheless, where "'on the one side from superior knowledge of the matter derived from a fiduciary relation, or from an overmastering influence, or on the other from weakness, dependence, or trust justifiably reposed, unfair advan-

---

* Special Term in confirming the report of the Referee recited in its order of November 16, 1977 "that defendant was capable and able to know what she was doing when she executed the stipulation of settlement and not in any state of disability."

tage in a transaction is rendered probable * * * the burden is shifted, the transaction is presumed void, and it is incumbent upon the stronger party to show affirmatively that no deception was practiced, no undue influence was used, and that all was fair, open, voluntary and understood. This doctrine is well settled' *(Cowee v Cornell,* 75 NY 91, 99-100)." (See *Matter of Gordon v Bialystoker Center & Bikur Cholim,* 45 NY2d 692, 699, *supra.)*

█ In the circumstances here, the burden shifted to plaintiff to show that no fraud, deception, duress or undue influence was practiced on defendant and that "all was fair, open, voluntary and understood." On the record before us, plaintiff did not sustain this burden. The Referee's finding that "there was no fraud, misrepresentation or misconduct by plaintiff or his attorney practiced on the defendant" is not supported by clear and convincing evidence (see *Matter of Gordon v Bialystoker Center & Bikur Cholim, supra).*

We conclude therefore, that the stipulation is a nullity and the judgment of divorce must be vacated. Accordingly, order of the Supreme Court, Bronx County (HELMAN, J.), entered November 16, 1977, granting plaintiff's motion to confirm the Referee's report, should be reversed, on the law and the facts, without costs or disbursements. The Referee's report should be disaffirmed, the motion to set aside the stipulation dated May 8, 1975 granted, the judgment of divorce entered in the Supreme Court, Bronx County, on June 11, 1975 vacated, and defendant be afforded 30 days from the date of service of a copy of the order hereon with notice of entry to serve her answer in this action.

KUPFERMAN, J. P. (dissenting in part). If the facts were solely as set forth in the majority opinion, I would concur. However, they are not.

Shortly after the divorce proceeding commenced, the wife's sister presented the legal papers to their father. He then took them to his attorney. However, although a notice of appearance was entered on appellant's behalf, she directed that no further action be taken.

There are other aspects of appellant's background which need not be enumerated here, which make it clear that custody of the infant child should be with the father and that a divorce was justified. I would affirm but, if the appellant is now in need of support, there is a proper vehicle for considera-

tion thereof. (See *McMains v McMains,* 15 NY2d 283; *Morse v Morse,* 45 AD2d 370, app dsmd 36 NY2d 911.)

FEIN, LANE and SANDLER, JJ., concur with BIRNS, J; KUPFERMAN, J. P., dissents, in part, in an opinion.

Order, Supreme Court, Bronx County, entered on November 16, 1977, reversed, on the law and on the facts, without costs and without disbursements, the Referee's report is disaffirmed, the motion to set aside the stipulation dated May 8, 1975 granted, the judgment of divorce entered in the Supreme Court, Bronx County, on June 11, 1975, is vacated, and the defendant afforded 30 days from the date of service of a copy of this court's order, with notice of entry, to serve her answer in this action.