OGDEN CORPORATION and Avondale Shipyards, Inc., Plaintiffs,

v.

The TRAVELERS INDEMNITY COMPANY, Defendant.

No. 84 Civ. 9174 (JFK).

United States District Court, S.D. New York.

Jan. 6, 1988.

Burlingham Underwood & Lord, New York City, for plaintiffs; Kenneth H. Volk, Geoffrey J. Ginos, Christopher D. Sposato, of counsel.

Hill, Rivkins, Carey, Loesberg, O'Brien & Mulroy, New York City, for defendant; Raymond P. Hayden, Sanford E. Balick, of counsel.

### FINDINGS of FACT and CONCLUSIONS of LAW

KEENAN, District Judge.

The parties having agreed that the trial in this case will be had upon the pleadings and documentary submissions, the Court makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

Plaintiff Ogden Corporation ("Ogden"), is a Delaware corporation with its principal place of business in New York. Plaintiff Avondale Shipyards, Inc. ("Avondale") is a Louisiana corporation with its principal place of business in Louisiana, and is a wholly owned subsidiary of Ogden (plaintiffs will be hereinafter referred to collectively as "Ogden"). Defendant The Travel-

ers Indemnity Company ("Travelers") is a Connecticut corporation with its principal place of business in Connecticut. Jurisdiction is predicated on diversity jurisdiction pursuant to 28 U.S.C. § 1332.

On December 11, 1981, Travelers issued a general liability insurance policy covering plaintiffs. It is upon this policy that this action is based.

On October 18, 1978, Avondale entered into a contract with three indirect subsidiaries of Occidental Petroleum Corporation ("Occidental") by which Avondale was to construct three integrated tug/barge units ("ITBU"), which were the Tug OXY PRODUCER/Barge OXY 4102 (collectively "OXY PRODUCER"), the Tug JULIUS HAMMER/Barge OXY 4101 (collectively "JULIUS HAMMER"), and the Tug FRANCES HAMMER/Barge OXY 4103 (collectively "FRANCES HAMMER"). Each of the ITBUs were delivered and were to be used by Occidental's subsidiaries to deliver, among other things, superphosphoric acid (SPA) to the Union of Soviet Socialist Republics. Each ITBU consists of a catamaran tug known as a "CATUG" and a barge. The tug and barge are joined by an interconnection system and are designed to function as a single unit.

On its maiden voyage on September 12, 1981, the OXY PRODUCER experienced difficulties and diverted to the Azores for repairs by September 14, 1981. On September 20, she weighed anchor and set out again, only to experience bad weather, which led to further damage causing the OXY PRODUCER to sink. Thereafter, the JULIUS HAMMER and FRANCES HAMMER (hereinafter "the sisterships") were withdrawn from service by Occidental.

In September, 1982, Occidental and its subsidiaries brought suit against Ogden and Avondale, among others, in federal district courts in the Eastern District of Louisiana and the Southern District of New York (hereinafter the "OXY litigations"). Occidental alleged that they suffered damages as a result of the sinking of the OXY PRODUCER including the value of the lost Tug, the loss of the charterhire profits, costs of substitute vessels, transshipment

expenses of SPA cargo, and loss of profits with respect to contracts to deliver SPA cargo. Occidental also alleged damages as a result of the withdrawal of the sisterships, including expenses and losses from voyage cancellations, inspections, repairs and modifications of the sisterships, loss of use, payment of time charter hire, lost profits from failure to collect sub-time charter hire and to meet cargo contracts, and the costs of chartering substitute vessels. Occidental also sought rescission of the construction contracts for the sisterships. Occidental collectively asserted causes of action for, *inter alia,* breach of express warranties, breach of implied warranties, breach of contract, rescission, strict liability in tort and negligence. The suits were consolidated in the Eastern District of Louisiana. A decision was rendered in that action on June 3, 1986 by the Honorable Morey L. Sear, Judge of that Court. Judge Sear found Avondale (Ogden, as its guarantor), and Hvide Marine International Inc. and Hvide Shipping, Inc. (collectively "Hvide"), jointly and severally liable to plaintiffs on the breach of contract and negligence claims regarding the sinking of the OXY PRODUCER. All other causes of action, including those concerning the sisterships, were dismissed or abandoned.

On or about October 7, 1982, after answering the complaints in the OXY litigations, Ogden gave timely notice of the claims to Travelers. On December 29, 1982, Travelers informed Ogden that Travelers would decline to defend or indemnify plaintiffs, citing exclusions J and L of the insurance policy. Ogden requested that Travelers reconsider the issue and on July 11, 1984, Travelers issued a letter reiterating their position that the claims were not covered by the policy. Ogden filed the present suit on December 20, 1984 seeking a declaratory judgment that defendant Travelers has a duty to defend and to indemnify plaintiffs against the claims in the OXY litigations pursuant to the insurance policy between the parties. The parties have agreed that this action will be tried upon documentary submissions.

The insurance policy at issue is a comprehensive general liability insurance policy issued to Ogden by Travelers in December 1981. The policy covers Ogden's subsidiaries, including Avondale and it is undisputed that the policy was in full force and effect at the time of the incidents at issue. The present policy is a renewal policy of the same coverage originally issued in 1975, and was negotiated between Travelers and Ogden's insurance broker, Frank B. Hall.

The provisions in the policy are not in dispute. The policy states in pertinent part:

> Liability. The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this policy applies caused by an occurrence, or personal injury or advertising injury, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such injury or damage even if any of the allegations of the suit are groundless, false or fraudulent. . . .

The parties have agreed that both Ogden and Avondale are "insureds" under the policy, Pre–Trial Order ¶ 3(7), and that the requirement of an "occurrence" has been satisfied regarding the claims for the sinking of the OXY PRODUCER and the loss of use of the sisterships. Pre–Trial Order ¶ 3(21).

"Property damage" under the policy is defined as

> (1) physical injury to or destruction of tangible property which occurs during the policy period including the loss of use thereof at any time resulting therefrom, (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period. . . .

Because the claims in the OXY litigations allege damage to tangible property, namely the OXY PRODUCER and loss of use of the two sisterships, the requirement of "property damage" has been met.

There are three relevant exclusions. They provide that coverage will not apply:

J. to property damage to

1. the named insured's products arising out of such products or any part of such products;

2. work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;

\* \* \* \* \* \*

K. to loss of use of tangible property which has not been physically injured or destroyed resulting from

1. a delay in or lack of performance by or on behalf of the named insured of any contract or agreement, or

2. the failure of the named insured's products or work performed by or on behalf of the named insured to meet the level of performance, quality, fitness or durability warranted or represented by the named insured;

but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the named insured's products or work performed by or on behalf of the named insured after such products or work have been put to use by any person or organization other than an insured;

L. to damages claimed for the withdrawal, inspection, repair, replacement, or loss of use of the named insured's products or work completed by or for the named insured or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein. . . .

Whether or not the OXY litigation claims come under policy coverage is a question of law.

## CONCLUSIONS OF LAW

### I. Applicable Law

■ The threshold issue before this Court is whether or not to apply New York law. Plaintiffs argue that New York law applies according to the mandate of *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and because Ogden's principal place of business is New York and the insurance policy was negotiated, countersigned and delivered in New York. Defendants contend that although New York law is applicable here, this Court should also look to other courts concerning the interpretation of similar insurance provisions. Pre–Trial Order ¶ 5(1). The Court agrees with plaintiffs. In *Erie*, the Supreme Court held that a federal district court having diversity jurisdiction must apply the law of the state in which it is sitting. Thus, New York law applies.

### II. Defendant's Duty to Defend

Does Travelers have a duty to defend Avondale and Ogden in the OXY litigations? Before reaching this substantive issue, however, this Court must decide whether to admit plaintiffs' exhibits 1 and 4–31 into evidence for the purpose of determining whether a duty to defend exists.

Ogden and Avondale offer the proposed exhibits, as evidence of the substance of the underlying claims and of Travelers' knowledge thereof. The exhibits consist of documents originally produced from the litigation files of the underlying actions and subsequently reviewed by Travelers. Ogden contends that Travelers had a duty to defend the underlying actions in light of the substance of those actions as revealed by these documents. Travelers argues that, in determining whether there is a duty to defend, the Court is strictly limited to reference to the allegations of the complaint.

■ It is well settled that in determining whether the insurer has a duty to defend "the point of departure is the allegations of the complaint in the action brought against the insured." *Sucrest Corp. v. Fisher Governor Co.*, 83 Misc.2d 394, 399, 371 N.Y.S.2d 927, 934 (1975); *see Goldberg v. Lumber Mutual Casualty Ins. Co.*, 297 N.Y. 148, 77 N.E.2d 131 (1948). If the

allegations of the complaint are ambiguous or incomplete, the insurer is nevertheless obligated to defend if the case is potentially within the coverage of the policy. *Commercial Pipe & Supply Corp. v. Allstate Ins. Co.*, 36 A.D.2d 412, 415, 321 N.Y.S.2d 219, 221 (4th Dep't.1971), *aff'd*, 30 N.Y.2d 619, 331 N.Y.S.2d 42, 282 N.E.2d 128 (1972). Moreover, the insurer's duty to defend may arise after the filing of the complaint. *Sucrest Corp.*, 83 Misc.2d at 401, 371 N.Y.S.2d at 936. Accordingly, courts may look beyond the face of the complaint to facts known to the insurer which may bring the claim within the coverage of the policy. *Commercial Pipe*, 36 A.D.2d at 415, 321 N.Y.S.2d at 221–22, *aff'd*, 30 N.Y.2d 619, 331 N.Y.S.2d 42, 282 N.E.2d 128 (1972); *Sucrest Corp.*, 83 Misc.2d at 403, 371 N.Y.S.2d at 937.

■ The Court will allow plaintiffs' exhibits to be admitted into evidence for the purpose of determining what knowledge Travelers had outside the allegations in the complaint, which might bring the claims within the purview of the policy, and trigger a duty to defend.

■ Under New York law, the duty to defend under an insurance policy is broader than the duty to indemnify. That is,

the question is not whether the injured party can maintain a cause of action against the insured but whether he can state facts which bring the injury within the coverage. If he states such facts the policy requires the insurer to defend irrespective of the insured's ultimate liability.

*Sucrest Corp.*, 83 Misc.2d at 400, 371 N.Y.S.2d 927 (quoting *Grand Union Co. v. General Acc., Fire & Life Assur. Corp.*, 254 A.D. 274, 280, 4 N.Y.S.2d 704 *aff'd*, 279 N.Y. 638, 18 N.E.2d 38 (1938)). As long as there is a possibility of recovery, "no matter how remote," *Sucrest Corp.*, 83 Misc.2d at 402, 371 N.Y.S.2d 927, the insurer will have a duty to defend. To be relieved of this duty, the insurer must show that the claims in the complaint are "'*solely* and *entirely* within the policy exclusions, and, further, that the allegations, *in toto*, are subject to no other interpretation.'" *Sea-*

*board Surety Co. v. Gillette Co. et al.*, 64 N.Y.2d 304, 312, 486 N.Y.S.2d 873, 476 N.E.2d 272 (1984) (quoting *International Paper Co. v. Continental Cas. Co.*, 35 N.Y.2d 322, 325, 361 N.Y.S.2d 873, 320 N.E.2d 619 (1974)). Moreover, even if there are other claims asserted which fall outside coverage, the claims which are potentially covered will give rise to a duty to defend the entire action. *Schulman Investment Co. v. Olin Corp.*, 514 F.Supp. 572, 575 (S.D.N.Y.1981); *Seaboard Surety*, 64 N.Y.2d at 310, 486 N.Y.S.2d 873, 476 N.E.2d 272.

■ Once the standard for the duty to defend is clear, the Court must determine whether, in light of the allegations in the complaints and Travelers' knowledge of those allegations, there was a possibility that the claims in the OXY litigations could come within the policy and outside the exclusions.

■ It is well settled that insurance contracts are to be construed in the same manner as other contracts and must be interpreted in order to effectuate the intent of the parties. *American Home Products Corp. v. Liberty Mutual Ins. Co.*, 565 F.Supp. 1485, 1492 (S.D.N.Y.1983), *modified on other grounds*, 748 F.2d 760 (2d Cir.1984). If the plain meaning of the contract can be discerned, a court will give effect to that meaning. *Id.* A contract term is ambiguous, however, if there is a "reasonable basis for a difference of opinion." *Breed v. Insurance Co. of N.A.*, 46 N.Y.2d 351, 355, 413 N.Y.S.2d 352, 385 N.E.2d 1280 (1978).

■ In the field of insurance contract provisions, the general rule is to construe ambiguities in favor of the insured and against the insurer. *See id.* at 353, 413 N.Y.S.2d 352, 385 N.E.2d 1280; *Lipton, Inc. v. Liberty Mutual Ins. Co.*, 34 N.Y.2d 356, 361, 357 N.Y.S.2d 705, 314 N.E.2d 37 (1974). This rule applies particularly to exclusionary clauses. *Breed*, 46 N.Y.2d at 353, 413 N.Y.S.2d 352, 385 N.E.2d 1280; *Lipton*, 34 N.Y.2d at 361, 357 N.Y.S.2d 705, 314 N.E.2d 37. Defendant Travelers argues, however, that the traditional rule

should not apply in this case, since it alleges that Ogden, through its insurance broker, Frank B. Hall, was primarily responsible for drafting the insurance provisions at issue. The Court is not persuaded by this argument. Although Ogden did in fact negotiate with Travelers, it cannot be said that Ogden completely drafted the provisions in question so as to cause the Court to apply a limited exception to the general rule by construing ambiguities in favor of the insurer. Thus, ambiguities, if any, are to be construed in favor of Ogden.

■■■ The Court now turns to the question of whether the allegations in the OXY litigation complaints are potentially covered by the insurance policy. The Court will first deal with the claims regarding the withdrawal of the sisterships. As previously discussed, "property damage" under the policy includes "loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period." The claims regarding the sisterships are tied to their loss of use. The allegations in the complaint and the exhibits indicate that there is some question as to whether the withdrawal was the result of the sinking of the OXY PRODUCER or of the discovery of the defects in the sisterships themselves. Since the parties agree, however, that the sinking of the OXY PRODUCER and the existence of defects in the sisterships are both "occurrences" under the policy, the loss of use from the withdrawal of the sisterships arose from an occurrence and is thus "property damage" under the policy.

Exclusion J denies coverage for property damage to named insured's products "arising out of such products." The OXY litigation complaints allege that the sisterships were withdrawn due to the discovery of serious defects in the interconnection systems. The National Transportation Safety Board Marine Accident Report, however, indicates that the sisterships were taken out of service after the sinking of the OXY PRODUCER, but before any inspection of the sisterships themselves. In the first situation, since the loss of use arose out of the sisterships themselves, the claims would fall under exclusion J. In the second situation, the loss of use was the result of damage to another ship, bringing the claim outside exclusion J and under the coverage of the policy. Because of this uncertainty, it cannot be said that the sistership claims fall definitively within exclusion J.

The second exclusion asserted by Travelers, exclusion L, excludes coverage for the loss of use of the named insured's products if they are withdrawn "because of any known or suspected defect or deficiency." Plaintiffs allege that under New York law, this exclusion only applies to withdrawals by the named insured, not to withdrawals by third parties, citing the holding in *Lipton, Inc. v. Liberty Mutual Ins. Co.*, 34 N.Y.2d 356, 357 N.Y.S.2d 705, 314 N.E.2d 37 (1974). Defendant contends, however, that the *Lipton* rule is only applicable in limited circumstances. *See Advanced Refrigeration & Appliance Co. v. Ins. Co. of N.A.*, 42 A.D.2d 484, 349 N.Y.S.2d 195 (1973). Although there are New York cases which apply the exclusion where a third party is the actor, there is clearly a possibility that the withdrawal by Occidental will bring the claims outside exclusion L. This fact prevents exclusion L from barring a duty to defend.

Exclusion K is the last exclusion asserted by Travelers. Plaintiff asserts that under New York law, this exclusion only applies to claims sounding in breach of contract or warranty. *See Willets Point Contracting Corp. v. Hartford Ins. Group*, 75 A.D.2d 254, 259, 429 N.Y.S.2d 230 (1980), *aff'd*, 53 N.Y.2d 879, 440 N.Y.S.2d 619, 423 N.E.2d 42 (1981). Defendant does not dispute the applicable law, but argues that the tort claims in this case are "shot-gun" allegations and do not arise from any alleged tortious conduct. Defendant's Reply Brief at 30. Defendant cites New York courts which have held that these insubstantial tort claims alone will not trigger a duty to defend. The complaints in the OXY litigations do assert tort claims in strict liability and negligence. Since there is no evidence that these claims are "shot-gun" claims,

however, it is conceivable that these claims will fall outside exclusion K.

Consequently, there is a possibility that the claims in the OXY litigations regarding the sisterships will fall outside the exclusions asserted by Travelers and within the coverage of the policy. The presence of such a possibility thus invokes a duty of Travelers to defend all claims in the OXY litigations. Because the sistership claims have triggered a duty to defend, this Court need not consider the claims regarding damage to the OXY PRODUCER and their effect on the duty to defend.

### III. Defendant's Duty to Indemnify

██ Although Travelers has been found to have a duty to defend, its duty to indemnify is much narrower and depends primarily on the Louisiana District Court's findings as to Ogden's liability. In its opinion, that Court found that Avondale, along with another defendant not involved in the case at bar, were jointly and severally liable to Occidental in negligence and breach of contract for the damage of the OXY PRODUCER. The other claims, including those concerning the withdrawal of the sisterships, were dismissed or abandoned before the final decision in that case. The Louisiana Court reserved decision on the proportion of contribution owed by Avondale and the other defendant. Thus, on the issue of indemnity, this Court only need consider whether Travelers has an obligation to indemnify Ogden and Avondale with respect to liability for damage to the OXY PRODUCER.

It has already been determined that the policy, absent exclusions, covers liability for the damage to the OXY PRODUCER. The next question is whether such liability falls within one of the policy exclusions. The Court holds that it does in fact fall within exclusion J.

Exclusion J bars coverage for property damage to "named insured's products arising out of such products or any part of such products." The issue here centers upon whether the tug, barge and interconnection system in each ITBU are to be considered separate named insured's prod-ucts or one product. Travelers contends that each of the three ITBUs is a named insured's product under the policy. Thus, exclusion J bars coverage of any claim and relieves Travelers of any duty to indemnify. Ogden counters that the property damage to the named insured's product must arise directly out of that same product. Ogden argues that there is sufficient evidence to indicate that the tug and barge should be considered separate and distinct products. Thus, damage to the tug caused by the barge or the interconnection system did not arise directly from the same product and exclusion J does not apply. Travelers replies that the ITBU is only one product and the tug and barge are merely parts of that product.

In the case at hand, the evidence indicates that the ITBU is one "named insured's product" under exclusion J and the tug, barge and interconnection system are to be considered parts of that product. Several factors lead the Court to this conclusion. First of all, the complaints in the OXY litigations all refer to "the integrated tug/barge unit" as "the Vessel." Plaintiffs' and Defendant's Joint Exhs. 1 & 2. Avondale had entered into three agreements to manufacture three "CATUG Integrated Tug/Barge Chemical/Oil Vessel[s]." Plaintiffs' Exhs. 7, 8 & 9. The United States Patent Abstract for the "Seagoing Tug and Barge Construction" describes the vessel as "a basic two-part cargo carrying assembly." Plaintiffs' Exh. 10. Plaintiffs allege that the fact that the tugs and barges were subject to separate Coast Guard regulations makes them separate products. Plaintiffs' Trial Brief at 6. The Court notes, however, that the same Coast Guard notice of separate regulations referred to by the plaintiffs describes the "subject vessels" as "integrated tug/barge combinations." Plaintiffs' Exh. 11. Both the United States Coast Guard Investigation Report, Plaintiffs' Exh. 21, and the National Transportation Safety Board Marine Accident Report, Plaintiffs' Exh. 22, refer to the vessel as the "integrated tug-barge." Plaintiffs also urge the Court to consider the fact that the tugs and barge components are interchangeable and could

potentially be built by separate shipyards. It is significant, however, that the documents put forth by plaintiffs again refer to the tug/barge combination as a single vessel. Plaintiffs' Exhs. 25 & 26. Moreover, there is no evidence which would indicate that either the tug or barge would ever function alone, but always together as a unit. See Plaintiffs' Reply Brief at 24. The Court would also note that the opinion of the Louisiana District Court which assigns liability to plaintiffs, refers to the integrated tug/barge as the "vessel" and treats the tug, barge and interconnection system as mere components of that vessel.

Under New York law, exclusion J, commonly referred to as the "work-product" exclusion, is designed to cover a situation where the work product of the insured causes damage to property other than the insured's product. *Zandri Constr. Co. v. Fireman's Ins. Co.*, 81 A.D.2d 106, 109, 440 N.Y.S.2d 353 (3rd Dep't.1981), *aff'd*, 54 N.Y.2d 999, 446 N.Y.S.2d 45, 430 N.E.2d 922 (1981). It is not designed

> to insure ... against contractual liability resulting in economic loss because [the insured's] work product causes damages to the party who contracted for its completion. To hold otherwise would constitute rewriting the policies so as to guarantee the insured's work product and negate completely the wording of the exclusionary clause.

*Zandri*, 81 A.D.2d at 109, 440 N.Y.S.2d 353, *aff'd*, 54 N.Y.2d 999, 446 N.Y.S.2d 45, 430 N.E.2d 922 (1981). To hold that the tug and barge components of the ITBU are to be considered separate products under the exclusion, rather than parts of one product, would in effect serve as a guarantee of the ITBU by Travelers, precisely what New York courts have sought to avoid. For these reasons, the Court concludes that the ITBU is one "named insured's product" under exclusion J. The damage to OXY PRODUCER, found to be due to the failure of Avondale to deliver the vessel in seaworthy condition as it contracted to do, arises out of defects in the OXY PRODUCER itself. Consequently, plaintiffs' liability falls within exclusion J

which precludes any duty to indemnify by Travelers.

Since insurance policy exclusions have been held not to be inconsistent with one another, the application of one exclusion bars coverage, regardless of any other exclusion. *Zandri*, 81 A.D.2d at 109, 440 N.Y.S.2d 353, *aff'd*, 54 N.Y.2d 999, 446 N.Y.S.2d 45, 430 N.E.2d 922 (1981). Thus, the application of exclusion J to the present claims for indemnity obviates any need for consideration of exclusions K and L.

## CONCLUSION

For the foregoing reasons, the Court concludes that defendant Travelers has a duty to defend plaintiffs Avondale and Ogden with regard to the OXY litigations. Accordingly, judgment is entered for plaintiffs on this issue and defendant is obligated to reimburse plaintiffs for the amount of expenses incurred by plaintiffs in defending the OXY litigations.

Defendant Travelers has no duty to indemnify plaintiffs, however, for any liability found under those claims and judgment as to the indemnification claim is rendered in favor of defendant.

SO ORDERED.