**JAKOBSON SHIPYARD, INC., Plaintiff,**

**v.**

**The AETNA CASUALTY and SURETY COMPANY and The Aetna Life and Casualty Company, Defendants.**

**No. 89 Civ. 4441 (SWK).**

United States District Court, S.D. New York.

Sept. 11, 1991.

Burlingham, Underwood & Lord, New York City by Herbert M. Lord, for plaintiff.

O'Connor, O'Connor, Hintz & Deveney, East Rockaway, N.Y., by John R. O'Connor, for defendants.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

Plaintiff Jakobson Shipyard, Inc. ("Jakobson") brings this declaratory judgment action to determine the rights and liabilities of the parties under a contract of insurance issued by defendant Aetna Life and Casualty Company ("Aetna").[1] The action arises in connection with Aetna's refusal to defend a prior action in this court, *Express Barge Inc. v. Jakobson Shipyard, Inc.*, 86 Civ. 6509 (KTD) (the "Express Action"), in which Jakobson suffered a $775,000.00 judgment. The Court has jurisdiction under 28 U.S.C. § 1332.

Aetna moves, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for an order granting it summary judgment dismissing the complaint. Aetna contends that the express provisions of the policy at issue exclude its obligation to defend or indemnify Jakobson with respect to the judgment Jakobson suffered or any attorneys' fees it incurred in defending the Express Action.

## BACKGROUND

Jakobson is a corporation which owns and operates a shipyard in Oyster Bay, New York. Defendants are Connecticut corporations maintaining their principal place of business in Hartford, Connecticut. In or about January 1984 Jakobson purchased and Aetna issued a Comprehensive General Liability insurance policy effective from January 1, 1984 through January 1, 1985. Attached to and made part of this policy was a Broad Form General Liability Endorsement containing various modifications to the policy for which Jakobson paid an additional premium. In or about January 1985, plaintiff purchased from Aetna a second Comprehensive General Liability insurance policy, identical to the first, for coverage from January 1, 1985 through January 1, 1986. This policy contained the

same Broad Form General Liability Endorsement as did the first. (The policies and endorsements are referred to collectively as the "CGL Policy.")

On August 10, 1983, Jakobson delivered to Express Barge, Inc. ("Express") a single screw diesel tug named "Escort," contracted for in 1981.[2] On August 4, 1983, Jakobson contracted with Express to build a second diesel tug, identical to the first, named "Consort." During Consort's sea-trials in October 1984 and thereafter, Express discovered certain defects in Consort's steering mechanism and notified Jakobson.

On August 21, 1986, Express commenced the Express Action against Jakobson claiming breach of warranty in connection with the steering mechanisms of both Consort and Escort. The complaint in the Express Action alleges that "the steering systems do not operate as warranted; the steering systems do not have adequate power to perform in accordance with the Specifications and the steering system on the tug CONSORT was improperly installed through defective, incompetent workmanship." Complaint at ¶ 15. The defects allegedly made both boats inoperable because they prevented their rudders from turning. *Id.* at ¶ 16.

Jakobson informed Aetna of Express' claims and requested that Aetna defend the Express Action and indemnify it for any loss suffered in connection with the Express Action. By letter dated October 14, 1986, Aetna refused to either defend or indemnify Jakobson on the grounds that the CGL Policy expressly excluded such coverage. The Express Action went to trial and judgment was entered in favor of Express in the amount of $872,660.23. The parties settled prior to appeal and the judgment was subsequently satisfied for $775,000.00.

The complaint in this action alleges that under the CGL Policy, Aetna is obligated to indemnify Jakobson for the amount of the

---

**1.** The term "Aetna" will hereafter refer to both defendants.

**2.** Plaintiff was indemnified for the cost of rewelding Escort under a Builders Risk Insurance policy it had purchased from Lloyd's Underwriters when Express claimed Escort's original welding was deficient.

settlement in the Express Action as well as the legal fees Jakobson incurred defending that action. Aetna interposed an answer denying liability under the CGL Policy.

Aetna now moves for summary judgment dismissing the complaint. It argues that the Policy only requires Aetna to indemnify the insured for an "occurrence" as that term is defined in the CGL Policy, and that no such "occurrence" is alleged in the Express Action complaint. It also argues that the CGL Policy's exclusionary clauses eliminate Aetna's duty to either indemnify or defend plaintiff for losses incurred in connection with the Express Action.

Jakobson opposes the motion and argues that the damages suffered in the Express Action are covered by the CGL Policy and, alternatively, that the language and obscure location of the Policy's exclusionary clauses render the CGL Policy unconscionable.

## A. Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). In testing whether the movant has met this burden, the Court must resolve all ambiguities against the movant. *Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1187 (2d Cir.1987) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)).

▪ Where the sole question presented on a motion for summary judgment is the interpretation of a clear and unambiguous written agreement, the issue is one of law for the court and may be decided upon a motion for summary judgment. *See Pantone, Inc. v. Esselte Letraset, Ltd.*, 878 F.2d 601 (2d Cir.1989); *Tokio Marine & Fire Ins. Co. v. McDonnell Douglas Corp.*, 617 F.2d 936 (2d Cir.1980); *West, Weir & Bartel, Inc. v. Mary Carter Paint Co.*, 25 N.Y.2d 535, 307 N.Y.S.2d 449, 255 N.E.2d 709 (1969); *Super v. Lux*, 159 A.D.2d 203, 552 N.Y.S.2d 202 (1st Dept.1990); *Pharma-*

*ceutical Horizons, Inc. v. Sterling Drug, Inc.*, 127 A.D.2d 514, 512 N.Y.S.2d 30 (1st Dept.1987). This principle applies equally to contracts of insurance. *See Ogden Corp. v. Travelers Indemnity Co.*, 681 F.Supp. 169, 173 (S.D.N.Y.1988); *State v. Home Indem. Co.*, 66 N.Y.2d 669, 495 N.Y.S.2d 969, 486 N.E.2d 827 (1985).

## B. Aetna's Duty to Indemnify

▪ Under New York law an insurer's obligation to indemnify arises only when the insurance contract expressly or impliedly creates such a duty. *See Smith v. Hooker Chemical and Plastics Corp.*, 83 A.D.2d 199, 443 N.Y.S.2d 922, 924 (4th Dept.1981). In examining an insurance contract to determine whether such a duty exists, a court must give the words of the contract their plain and ordinary interpretation; the Court may not modify a contract's terms, nor give its words meaning which the parties did not intend. *See In re Ambassador Group, Inc. Litigation*, 738 F.Supp. 57, 62 (E.D.N.Y.1990). If the insured can show that a covered loss has occurred, the burden of proof shifts to the insurer to demonstrate that the loss is expressly excluded from coverage. *McCormick and Co., Inc. v. Empire Ins. Group*, 878 F.2d 27 (2d Cir.1989); *Sokolowski v. Aetna Life and Casualty Co.*, 670 F.Supp. 1199 (S.D.N.Y.1987).

### 1. *Existence of an Occurrence*

▪ Aetna argues that the CGL Policy's coverage applies only to losses resulting from an "occurrence" as that term is defined by the CGL Policy. Since Jakobson, according to Aetna, has failed to show damage resulting from an "occurrence," Jakobson has failed to establish that the loss for which it seeks to be indemnified is a covered loss under the CGL Policy. Aetna contends that because Jakobson has failed to carry its burden of establishing that the loss for which it seeks indemnity is a covered loss under the CGL Policy it is entitled to summary judgment as a matter of law. The Court agrees.

The first paragraph of the CGL Policy states in part:

[Aetna] will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies *caused by an occurrence,* and [Aetna] shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage.

CGL Policy annexed as Exhibit "B" to the affidavit of John R. O'Connor ("O'Connor Aff."), sworn to on September 14, 1990, at 2 (emphasis added). This language, prominently located within the CGL Policy's first paragraph, unambiguously indicates that Aetna's obligation to either indemnify or defend an insured is triggered only when the insured establishes, among other things, that the claimed damage resulted from an "occurrence." The CGL Policy defines "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." CGL Policy at 4. This definition of "occurrence" makes no reference to liability arising from an insured's breach of contract.

Review of the Express Action complaint unequivocally indicates that the claims against which Jakobson defended in that action sounded only in contract.[3] Jakobson's complaint in this action, moreover, alleges entitlement to restitution for damages suffered as the result of its breach of

> warranties and undertakings made under the Contracts and Specifications by providing steering systems … which were deficiently designed and constructed and which therefore failed to operate as required.

Complaint, at ¶ 12.

The Court finds that the unequivocal allegations of both the Express Action complaint and the complaint in this action establish that the judgment and loss suffered by Jakobson resulted not from an occurrence as that term is defined by the CGL Policy but rather from a breach of warranty. Jakobson has adduced no evidence from which a reasonable trier of fact might infer the existence of an occurrence under the CGL Policy.

Jakobson contends that the CGL Policy's definition of "occurrence" is so broad as to encompass liability for rudder malfunction resulting from faulty installation. Although the Court is bound to construe ambiguities in favor of the insured and against the insurer, *see Breed v. Insurance Co. of North America,* 46 N.Y.2d 351, 413 N.Y.S.2d 352 (1978); *Thomas J. Lipton Inc. v. Liberty Mutual Ins. Co.,* 34 N.Y.2d 356, 357 N.Y.S.2d 705, 314 N.E.2d 37 (1974), the Court envisions no reasonable construction of "occurrence" that would encompass allegations of breach of contract without rendering the definition of "occurrence" meaningless. Conceived as an "accident" in accordance with the terms of the CGL Policy, and given its plain meaning, an occurrence is an "unfortunate happening, unintentionally caused, and usually resulting in harm, injury or damage." The Random House Dictionary of the English Language 9 (1966). As broadly as the Court may construe "accident," the allegations in the Express Action of breach of contract of the steering mechanisms' failure to perform as warranted do not fall within the plain and generally accepted meaning of that term. Similarly, the phrase "continuous or repeated exposure to conditions" which, under the CGL Policy, may also constitute an occurrence, cannot reasonably be construed to encompass mechanical failure due to faulty design, construction or installation. The phrase refers rather to the repeated action of external forces resulting in damage. Neither the complaint nor the record, moreover, allege or otherwise indicate circumstances involving "continuous or repeated exposure to conditions" so as to render this possible basis for finding an occurrence a colorable one. Accordingly, Aetna is enti-

---

**3.** Paragraph 15 of the Express Action complaint specifically alleges breach of contract: "As a result of defendant's breach of the Escort Contract and the Consort Contract and the Plans and Specifications of the tugs, each tug fails to provide the maneuverability and steering capacity which defendant was paid to provide." Complaint, at ¶ 15.

tled to summary judgment dismissing the complaint's claim for indemnity since Jakobson has failed to adduce *prima facie* evidence of the threshold element of its contractual indemnity claim, namely, a loss resulting from an occurrence as that term is defined by the CGL Policy.

### 2. *Policy Exclusions*

■ The Court holds alternatively that even if the rudders' failure is properly deemed an "occurrence," the CGL Policy excludes coverage for the damage and loss alleged in the Express Action complaint. The CGL Policy provides that its coverage shall not apply

(a) to liability assumed by the insured under any contract or agreement except an incidental contract; *but this exclusion does not apply* to warranty of fitness or quality of the named insured's products or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner (emphasis added).

CGL Policy at 2. CGL Policy exclusion "(m)" precludes coverage for any damage caused by loss of use attributable to breach of warranty on the part of the insured:

"[t]his insurance does not apply ... to loss of use of tangible property which has not been physically injured or destroyed resulting from ... the failure of the named insured's products or work performed by or on behalf of the named insured to meet the level of performance, quality, fitness or durability warranted or represented by the named insured...."

CGL Policy exclusion "(n)" eliminates coverage for "property damage to the named insured's products arising out of such products or any part of such products." Paragraph VI(A)(3) of the Broad Form Endorsement which, by its terms, replaces exclusion "(o)," [4] eliminates coverage

with respect to the completed operations hazard and with respect to any opera-

tions classification stated in the policy or in the company's manual as "including completed operations", to property damage, to work performed by the named insured arising out of such work or any portion thereof, or out of such materials, parts or equipment furnished in connection therewith.

CGL Policy exclusion "(p)" eliminates coverage for

damages claimed for the withdrawal, inspection, repair, replacement, or loss of use of the named insured's products or work completed by or for the named insured or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein.

Each of these clauses is a standard exclusion adopted by the underwriting and policy drafting committees of the Mutual Insurance Rating Bureau and the National Bureau of Casualty Underwriters, or derived therefrom. *See generally* Roger C. Henderson, *Insurance Protection for Products Liability and Completed Operations—What Every Lawyer Should Know,* 50 Neb.L.Rev. 415 (1970).

When construing insurance contract exclusionary clauses, courts apply with particular care the general rule of construing ambiguities in favor of the insured and against the insurer. *See Ogden Corp. v. Travelers Indem. Co.,* 681 F.Supp. 169 (S.D.N.Y.1988). This rule is not to be rigidly applied, however, when "there is a *de minimus* conflict that readily gives way when a full reading of the policy makes the intent of the parties clearly discernible." *Zandri Constr. Co. v. Firemen's Ins. Co.,* 81 A.D.2d 106, 108–09, 440 N.Y.S.2d 353, 355 (3d Dept.), *aff'd sub nom. Zandri Constr. Co. v. Stanley H. Calkins, Inc.,* 54 N.Y.2d 999, 446 N.Y.S.2d 45, 430 N.E.2d 922 (1981); *accord Weedo v. Stone–E–Brick, Inc.,* 81 N.J. 233, 405 A.2d 788 (1979).

---

**4.** CGL Policy exclusion "(o)" eliminated coverage for "property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith."

*Zandri* involved construction of CGL exclusionary clauses virtually identical to those contained in the CGL Policy here. In considering the exclusionary clauses in *Zandri,* the Appellate Division refused to construe ambiguities in the policy so as to render the policy unconscionable. In that case, the plaintiff, Zandri Construction, had been contracted to build a church and was subsequently sued for breach of the construction contract. Zandri's insurers refused to either indemnify or defend it in connection with the construction contract litigation. Zandri then commenced a declaratory judgment action against its insurers seeking a declaration of the insurers' obligation to defend the underlying suit and to indemnify it in the event of an adverse judgment.

Zandri had purchased a comprehensive general liability insurance policy as well as contractual liability coverage from the defendant insurers. The policies contained identical exclusionary clauses which stated that:

> Such insurance does not apply to property damage to the named insured's products, to property damage to work performed by or on behalf of the named insured arising out of the work, or any portion thereof, or out of materials furnished in connection therewith or to damages claimed for work completed by or for the name insured.... Contractual liability shall not be construed as including liability *under a warranty of the fitness or quality of the named insured's products or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner.*

*Id.* 440 N.Y.S.2d at 355 (emphasis in original). The CGL policies in *Zandri* also carried an exception to these exclusionary provisions. The exception provided that "this exclusion does not apply to a warranty of fitness or quality of the named insured's products or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner." *Id.*

The court recognized that this exception to the exclusionary clauses could be interpreted as contradicting the exclusionary clauses, rendering the contract ambiguous and requiring that it be interpreted against its drafter in accordance with the "doctrine of ambiguity." *Id.* The court held, however, that "[e]xclusions in policies of insurance must be read seriatim, not cumulatively, and if any one exclusion applies there can be no coverage since no one exclusion can be regarded as inconsistent with another." *Id.* at 356 (quoting *Weedo, supra,* 405 A.2d at 795). The court reasoned that because the earlier exclusions unambiguously excluded coverage for damage to the insured's work product caused by the insured's breach of a warranty of fitness or quality

> the insurers clearly did not intend to provide coverage for claims against their insured for breach of express or implied warranties of workmanship when the damages claimed were the cost of correcting the work itself.... To hold otherwise would constitute rewriting the policies so as to guarantee the insured's work product and negate completely the wording of the exclusionary clauses.

*Id.* 440 N.Y.S.2d at 355.

Applying the *Zandri* standard, New York courts have consistently found that when a policy contains "provisions which clearly and specifically exclude certain risks, such provisions take precedence over other clauses which may describe or acknowledge general areas of coverage such that no genuine ambiguity arises." *Rhinebeck Bicycle Shop, Inc. v. Sterling Ins. Co.,* 151 A.D.2d 122, 126, 546 N.Y.S.2d 499, 502 (3d Dept.1989); *see also Softwater By George, Inc. v. Dryden Mut. Ins. Co.,* 155 A.D.2d 869, 547 N.Y.S.2d 479 (4th Dept. 1989) (eliminating from coverage property damage to work, work product and damages claimed for correcting work based upon policy exclusions).

The Court holds that exclusion "(a)" when read together with exclusions "(m)", "(n)", "(p)" and Broad Form Comprehensive General Liability Endorsement exclusion VI(A)(3), results in no genuine ambi-

guity. Under New York law, policy exclusions are to be read seriatim; exclusion "(a)" of the CGL Policy here, which in part excepts "warranties of fitness or quality of the named insured's products," from exclusion, is subject to those subsequent provisions of the policy which expressly exclude such coverage. As the Express Action 'complaint alleges damages resulting only from Jakobson's breach of its warranty of fitness, exclusions "(m)", "(n)", "(p)", and "VI(A)(3)", which preclude coverage for damages incurred solely as a result of a failed "business risk," i.e., the failure of the insured's own work product to perform in accordance with expectations, preclude coverage here.

As the New Jersey Supreme Court indicated in *Weedo* in rejecting an interpretation of a CGL policy which would have resulted in coverage for repair and replacement of the insured's own faulty workmanship, "[t]he clarity and effect of the 'business risk' exclusion clauses is called into question only under a curious reading of the standard CGL." 405 A.2d at 794. Such an interpretation, the court explained:

> relies on the supposition that the exception to exclusion "(a)"—"but this exclusion does not apply to a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner"—*grants* coverage for claims based on the warranty described. Not so. The contention runs counter to the basic principle that exclusion clauses *subtract* from coverage rather than grant it.

*Id.* (emphasis in original). The *Weedo* court relied in part upon a ruling of the Supreme Court of South Dakota to the same effect:

> Exclusion (a) does not extend or grant coverage. To the contrary it is a limitation or restriction on the insuring clause. The exception to exclusion (a) merely removes breach of implied warranty of fitness, quality or workmanship from the specific exclusion relating to contractual liability. The exception [to clause (a)] remains subject to and limited by all other related exclusions contained in the policy.

*Haugan v. Home Indem. Co.*, 86 S.D. 406, 413, 197 N.W.2d 18, 22 (1972). These constructions of the "business risk" exclusion, restated in *Zandri*, validate an underwriting policy which articulates a clear and unambiguous limitation upon standard liability coverage. *See Weedo*, 405 A.2d at 794. The Court shall not depart from this construction here.

 Plaintiff's related contention that the breach of warranty exclusions were unexpected and buried so deeply in the policy that they should be voided is also without merit. It is axiomatic that the signer of a contract is presumed to have read and understood all he signs regardless of whether he actually examined the document. *Maross Constr. Inc. v. Central New York Regional Transp. Auth.*, 107 A.D.2d 1010, 486 N.Y.S.2d 535, 537, *rev'd on other grounds*, 66 N.Y.2d 341, 497 N.Y.S.2d 321, 488 N.E.2d 67 (1985). To void a signed agreement the insured must demonstrate that it has not understood the contract because he signed it under duress, or by reason of fraud or misrepresentation. *Parker v. Parker*, 66 A.D.2d 328, 413 N.Y.S.2d 388, 391 (1st Dept.1979). Jakobson's mistaken belief that because it paid a premium for the Broad Form General Liability Endorsement he would receive "extra" coverage does not meet the standard demanded by this well-settled doctrine.

### C. Aetna's Duty to Defend

 Aetna also moves for summary judgment dismissing the complaint's claim of Aetna's breach of its contractual duty to defend Jakobson in the underlying action. It argues that the terms of the CGL Policy expressly excuse it from any obligation to defend Jakobson in a breach of warranty action for its failure to provide a finished product in accordance with the terms and conditions of a contract between it and a third-party. Jakobson, relying upon this Court's decision in *Ogden*, 681 F.Supp. at 173, asserts that Aetna's duty to defend is broader than its duty to indemnify, and that such a duty was triggered here, as in *Ogden*, since it cannot be said with certain-

ty that exclusion "(n)" [5] (exclusion "(j)" in the policy at issue in *Ogden*), would preclude coverage for property damage to Jakobson's products "arising out of such products." Pl. Mem., at 21.

In *Ogden*, this Court set forth New York law governing an insurer's duty to defend:

in determining whether the insurer has as duty to defend "the point of departure is the allegations of the complaint in the action brought against the insured." *Sucrest Corp. v. Fisher Governor Co.*, 83 Misc.2d 394, 399, 371 N.Y.S.2d 927, 934 (1975). If the allegations of the complaint are ambiguous or incomplete, the insurer is nevertheless obligated to defend if the case is potentially within the coverage of the policy....

Under New York law, the duty to defend under an insurance policy is broader than the duty to indemnify. That is

the question is not whether the injured party can maintain a cause of action against the insured but whether he can state facts which bring the injury within the coverage. If he states such facts the policy requires the insurer to defend irrespective of the insured's ultimate liability.

*Sucrest Corp.*, 83 Misc.2d at 400, 371 N.Y.S.2d [at] 927 (quoting *Grand Union Co. v. General Acc., Fire & Life Assur. Corp.*, 254 A.D. 274, 280, 4 N.Y.S.2d 704, *aff'd*, 279 N.Y. 638, 18 N.E.2d 38 (1938)). As long as there is a possibility of recovery, "no matter how remote," *Sucrest Corp.*, 83 Misc.2d at 402, 371 N.Y.S.2d 927, the insurer will have a duty to defend. To be relieved of this duty, the insurer must show that the claims in the complaint are " '*solely* and *entirely* within the policy exclusions, and, further, that the allegations, *in toto*, are subject to no other interpretations.' " *Seaboard Surety Co. v. Gillette Co. et al.*, 64 N.Y.2d 304, 312, 486 N.Y.S.2d 873, 476 N.E.2d 272 (1984) (quoting *International Paper Co. v. Continental Cas. Co.*, 35

N.Y.2d 322, 325, 361 N.Y.S.2d 873, 320 N.E.2d 619 (1974)).

681 F.Supp. at 172–73 (other citations omitted) (emphasis in original). The duty to defend, though broader than the duty to indemnify, is nevertheless limited by the proviso that the insurer need not defend if the insured's claims are unambiguously excluded from the policy, "and rest[ ] solely on whether the complaint alleges any facts or grounds which bring the action within the protection purchased." *Seaboard Surety Co., supra*, 64 N.Y.2d at 312, 486 N.Y.S.2d at 876, 476 N.E.2d at 275.

Applying this strict standard the Court holds that Aetna is under no duty to indemnify Jakobson under the terms of the CGL Policy. Although an insurer must establish that an insured's claims are "unambiguously excluded from the policy," *id.*, as set forth above, the complaints in both the Express Action and in this action unambiguously refer to economic injury suffered by Express as a result of Jakobson's breach of "warranties and undertakings ... by providing steering systems ... which were deficiently designed and constructed *and which therefore failed to operate as required.*" Complaint, at ¶ 12 (emphasis added). There is no possible construction of either the Express Action complaint or the complaint here which would permit this Court to find the existence of an "occurrence" as that term is defined by the CGL Policy, so as to bring Jakobson's loss colorably within the scope of the policy's coverage. Liability for economic damages resulting from an insured's failure to provide a product in conformity with specifications, and which consequently failed to operate as required, cannot reasonably be construed as damages resulting from an "occurrence" for purposes of policy coverage.

Jakobson's reliance on *Ogden, supra*, to support its argument that Aetna had duty to defend under the CGL Policy is misplaced. In *Ogden*, plaintiff shipyard brought an action seeking a declaratory judgment that its insurer had a duty to

---

**5.** Jakobson inadvertently refers to this exclusion as exclusion "(*o*)" in its opposition papers. *See* Memorandum of Law in Opposition to Defen- dants' Motion for Summary Judgment ("Pl. Mem."), at 22.

**615**

defend and indemnify it in connection with its sale of three integrated tug/barge units, one of which, the Oxy Producer, sank in bad weather and the others of which were consequently withdrawn from service. Although the court found that applicable policy exclusions precluded the insurer's duty to indemnify plaintiff, the court found the insurer obligated to defend the shipyard in the underlying litigation.

Critical to the court finding a duty to defend in *Ogden* was the parties' stipulation that "the requirement of an 'occurrence' has been satisfied regarding the claims for the sinking of the OXY PRODUCER and the loss of the two sisterships." 681 F.Supp. at 171. On the basis of this stipulation, the Court found "that the sinking of the OXY PRODUCER and the existence of defects in the sisterships are both 'occurrences' under the policy, [and that] the loss of use from the withdrawal of the sisterships arose from an occurrence ... under the policy."[6] *Id.* at 174. The parties' acknowledgement of an occurrence under the policy permitted plaintiff to satisfy its *prima facie* burden of showing that the loss fell within the policy coverage and to shift to the insurer the burden of proof of demonstrating that the loss was expressly excluded from coverage. *See McCormick and Co., supra; Sokolowski, supra.* Only after finding that plaintiff had carried its initial burden of establishing that the loss fell within the policy coverage did the court in *Ogden* treat the policy exclusions. *See Ogden,* 681 F.Supp. at 173–75.

Here, in contrast, there is no such stipulation admitting the existence of an occurrence. Moreover, the Court has found that Jakobson has failed to establish this critical threshold element of its claim. *See* pp. 609–611, *supra.* The Court therefore finds *Ogden* inapplicable.

**6.** The liability provision of the policy in *Ogden* setting forth the "occurrence" requirement is virtually identical to that of the CGL Policy here, and provides in relevant part:

The company will pay on behalf of the in- · sured all sums which the insured shall become legally obligated to pay as damages because of bodily injury of property damage to

CONCLUSION

For the reasons set forth above, defendants' motion, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for an order granting it summary judgment dismissing the complaint is granted in its entirety, and the complaint is hereby dismissed with costs to defendants. The Clerk is hereby directed to enter judgment accordingly.

SO ORDERED.

which this policy applies caused by an occurrence, or personal injury or advertising injury, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such injury or damage even if any of the allegations of the suit are groundless, false or fraudulent.... *Ogden,* 681 F.Supp. at 171.